1  STEPHEN R. HARRIS, ESQ.
2  Nevada Bar No. 001463
   HARRIS LAW PRACTICE LLC
3  6151 Lakeside Drive, Suite 2100
   Reno, NV 89511
4  Telephone: (775) 786-7600
   E-Mail: steve@harrislawreno.com
5  Proposed Attorneys for Debtors
6
7                    UNITED STATES BANKRUPTCY COURT
8                      FOR THE DISTRICT OF NEVADA
9                              * * * * *
10
11 IN RE:                              Case No. 17-50472-btb
                                       Case No. 17-50473-btb
12                                     Case No. 17-50474-btb
   BRISTLECONE, INC. DBA              Case No. 17-50475-btb
13 BRISTLECONE HOLDINGS,              Case No. 17-50476-btb
                                       Case No. 17-50478-btb
14 ─────────────────────────/        Case No. 17-50479-btb
                                       Case No. 17-50480-btb
15 BOONFI LLC,                        (Joint Administration Request Pending)
16 ─────────────────────────/        (Chapter 11)
17 BRISTLECONE LENDING, LLC,
18 ─────────────────────────/        **EMERGENCY MOTION FOR ORDER**
                                       **AUTHORIZING MAINTENANCE OF**
19 BRISTLECONE SPV I, LLC            **PREPETITION BANK ACCOUNTS**
                                       **AND FOR APPROVAL OF**
20 ─────────────────────────/        **INTERCOMPANY CASH**
                                       **MANAGEMENT SYSTEM**
21 I DO LENDING, LLC
22 ─────────────────────────/        Hearing Date:  OST Pending
                                       Hearing Time:  OST Pending
23 MEDLY, LLC                         Est. Time:     15 minutes
                                       Set by:        Judge Beesley
24 ─────────────────────────/
25 ONE ROAD LENDING, LLC
26 ─────────────────────────/
27 WAGS LENDING, LLC
28     Debtors.
   ─────────────────────────/

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive,
Suite 2100
Reno, NV 89511
775 786 7600

1

BRISTLECONE, INC., dba BRISTLECONE HOLDINGS, a Nevada corporation, and its wholly owned subsidiaries, BOONFI LLC, a Nevada limited liability company, BRISTLECONE LENDING, LLC, a Nevada limited liability company, BRISTLECONE SPV I, LLC, a Nevada limited liability, I DO LENDING, LLC, a Nevada limited liability company, MEDLY, LLC, a Nevada limited liability, ONE ROAD LENDING, LLC, a Nevada limited liability company, and WAGS LENDING, LLC, a Nevada limited liability company (collectively the "Debtors"), by and through their proposed counsel, STEPHEN R. HARRIS, ESQ., of HARRIS LAW PRACTICE LLC, hereby move this Court for entry of an emergency order authorizing the maintenance of the Debtors' prepetition Bank Accounts (all as hereinafter defined) and intercompany cash management system.

This Motion is based on the points and authorities below, the papers and pleadings on file herein including the Declaration of B. Kyle Ferguson ("Ferguson Declaration"), and any evidence or oral argument of counsel presented at the time of the hearing on this Motion.

## I.

## INTRODUCTION

1.     On April 18, 2017 (the "Petition Date"), the Debtors each filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Bristlecone, Inc., dba Bristlecone Holdings, LLC ("Bristlecone") is a Nevada closely held corporation, and each of the other seven (7) Debtors are wholly owned subsidiaries of Bristlecone.

2.     No request has been made for the appointment of a trustee or examiner, and no official committees have yet been established in these cases.

## II.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

4.     The basis for the relief sough herein are Sections 105 and 363 of the Bankruptcy Code, Fed. R. Bankr. P. 4001 and 6003, and LR 4001.

5.     Venue of Debtors' Chapter 11 cases in this District is proper pursuant to 28

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive,
Suite 2100
Reno, NV 89511
775 786 7600

U.S.C. §§ 1408 and 1409.

### III.

### BACKGROUND

6.    Debtors are in the business of providing financial leases to consumers for tangible goods in various industries, including medical and dental products, pets, household goods, wedding products and automobile parts.    The Debtors continue to operate their businesses as Debtors and Debtors-In-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.    The headquarters for the Debtors' business is located in Reno, Nevada, although the Debtors all transact business online in order to provide financial leases in approximately 43 states.    As of the Petition Date, the Debtors collectively employed approximately 23 employees.

### IV.

### RELIEF REQUESTED

**A.    The Debtors' Bank Accounts**

7.    To manage their business affairs efficiently and seamlessly, the Debtors must continue to utilize certain existing bank accounts (collectively, the "Bank Accounts") post-petition.    The Bank Accounts are essential for the Debtors' continued status of staying in business as a going concern.    A summary detailing the Bank Accounts used by the Debtors, including the bank balances on the Petition Date, is attached hereto as **Exhibit "A"** hereto and incorporated herein by that reference.

8.    Post-petition, the Debtors propose to retain their current Bank Accounts to avoid interruption in their ongoing business practices which require daily electronic deposit and withdrawal activity from the Bank Accounts.    As indicated on Exhibit "A", the Bank Accounts are located primarily at Wells Fargo Bank, N.A., with one account located with Utah Community Bank.

9.    As indicated in Paragraph 6 above, the Debtors' revenue is derived from lease payments from retail customers and from sales of lease contracts to Monterey Financial Services.    Specifically, consumers that desire to lease goods from approved retailers, apply for

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive,
Suite 2100
Reno, NV 89511
775 786 7600

approval of the lease with one of the Debtor entities depending on the specific lease product being requested.  Once approval is obtained and the retailer provides the consumer with the goods, payments are tendered from the Debtors to the retailer for the cost of that good.  Lease payments are then collected by a servicer, Monterey Financial Services ("Monterey"), and collected funds are deposited in the Debtors' various bank accounts after deduction of certain servicing fees.  The Debtors also sell many of the lease contracts outright to Monterey, and obtain payment from Monterey to continue to fund the Debtors' business overhead expenses and future leases to consumers.  This process results in a daily collection and transfer of funds via automatic ACH/electronic deposits and withdrawals from the Debtors' Bank Accounts.  As set forth in the Ferguson Declaration, because of the necessity to honor funding of new leases on a daily basis, the Debtors cannot afford an interruption in access to their Bank Accounts.  All of the funds on deposit in the Bank Accounts on the Petition Date were unencumbered and not subject to any lenders' cash collateral, with the possible exception of accounts for the Debtor Bristlecone SPV I, LLC, that are subject to a Loan and Security Agreement in favor of FRS BC, LLC, as assignee of Princeton Alternative Income Fund, LP and Westminster National Capital Co. ("FRS BC").  Currently, the Debtors do not use any funds in the Bristlecone SPV I, LLC accounts other than to pay the secured lender.

10.    Although each individual Debtor collects its own lease revenues in its designated bank account, on a regular basis, the various subsidiaries of Bristlecone transfer certain funds to a bank account maintained by the parent company, Bristlecone, in order to pay general overhead and payroll expenses that inure to all of the Debtor entities.    The bank account that is used to deposit funds from the subsidiaries to pay combined overhead costs is Wells Fargo checking account #4635.  See Ferguson Declaration.

**B.    Specific Procedures Requested**

11.    Through this Motion, the Debtors request that this Court grant the following relief and authorize the following procedures:

a.    that the Debtors are authorized and empowered to: 1) maintain all of their Bank Accounts in existence as of the Petition Date and as listed and described in Exhibit

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive,
Suite 2100
Reno, NV 89511
775 786 7600

4

"A";  2) treat the Bank Accounts for all purposes as Debtor-In-Possession Accounts; 3) use, in their present form, existing checks and other documents related to the Bank Accounts; 4) pay post-petition ordinary course bank fees in connection with the Bank Accounts; and 5) perform their obligations under the documents and agreements governing the Bank Accounts;

b.      that all Banks at which the Debtor maintains Bank Accounts are authorized and directed to: 1) continue to administer, service, and maintain the Bank Accounts as such Bank Accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the usual and ordinary course; and 2) to pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Debits") arising on or after the Petition Date, so long as there are sufficient collected funds in the relevant Bank Accounts and in accordance with the agreements governing said Bank Accounts, including, without limitation, any prepetition cash management agreements, merchant service agreements, or treasury services agreements;

c.      that Debits issued on the Bank Accounts prior to, but presented after, the commencement of the Debtors' Chapter 11 cases are honored and paid;

d.      that if the Debtors deem that any transactions should not be honored, that the Debtors shall promptly furnish to the Banks a list of those Debits drawn or issued that should not be paid.  The Banks are authorized and directed to rely on the representations of the Debtors as to which Debits are authorized to be honored and dishonored, whether or not such Debits are dated prior to, on, or subsequent to the Petition Date, and whether or not the Banks believe the payment is authorized by an order of the Court.  To the extent that the Debtors direct that any Debit be dishonored, the Debtors may issue replacement Debits consistent with the orders of this Court.

e.      that the Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business for all Debits presented for payment or exchanged for cashier's checks prior to the commencement of the Debtor's Chapter 11 Case;

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive,
Suite 2100
Reno, NV 89511
775 786 7600

5

f.      that nothing contained in this Motion or its subsequent order may prevent the Debtors from closing the Bank Accounts as they deem necessary and appropriate;

g.      that the Debtors reimburse the Banks for any claim arising prior to or after the Petition Date in connection with Debits deposited with the Banks which have been dishonored or returned for insufficient funds in the applicable accounts;

h.      that each Bank that maintained one or more Bank Accounts implements reasonable handling procedures to effectuate the terms requested in this Motion.  The Debtors request that no Bank that implements such handling procedures be liable to the Debtors or their estates, or otherwise held in violation of this Motion or its subsequent order, for honoring a prepetition Debit or other Debit: 1) at the direction of the Debtors that such prepetition Debit or other Debit be honored; 2) in the good faith belief that the Court has authorized that such prepetition Debit or other Debit be honored; or 3) as a result of an innocent mistake made despite implementation of such handling procedures;

i.      that the relief, rights, and responsibilities requested herein are deemed to apply to any and all Bank Account maintained in the Debtors' names;

j.      that to the extent any other order is entered directing a Bank to honor Debits made, drawn, or issued in payment of prepetition claims, the obligation to honor such items are subject to the order authorizing this Motion;

k.      that the Debtors and the Banks are authorized and directed to continue to perform pursuant to the terms of any prepetition documents and agreements governing the Bank Accounts, except and to the extent otherwise directed by the terms of this order.  The Debtors request that the Banks be authorized to continue offsetting any funds deposited in the Bank Accounts by the Debtors to the extent necessary to cover any fees, charges, and assessments set forth or provided for in the agreements governing the Bank Accounts or as otherwise permitted in the ordinary course of business pursuant to the agreements governing the Bank Accounts. The parties to such agreements seek to continue to enjoy the rights and remedies afforded them under such agreements, except to the extent modified by the Court or by operation of the Bankruptcy Code.

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive,
Suite 2100
Reno, NV 89511
775 786 7600

6

V.

**LEGAL ARGUMENT**

**A.    The Court Has The Authority To Grant The Relief Requested**

Uncertainty and risk surround the inception of every Chapter 11 case. Included within this class of risks is a debtor-in-possession's struggle to maintain current operations. In these Chapter 11 cases, the Debtors urgently require the continued use of their Bank Accounts. Absent the Bank Accounts, there is the possibility that the Debtors' Chapter 11 estates might sustain irreparable damage by losing customers, retailers and revenues. To avert this prospect, the Debtors seek authority to continue the operation of their existing Bank Accounts.

**B.    Cause Exists To Authorize The Debtor To Utilize Existing Bank Accounts**

A necessary aspect of the Debtors maintaining their business is the Debtors being permitted to continue to utilize their existing Bank Accounts and continue intercompany transfers of funds to pay common overhead expenses. As numerous courts have indicated, the Bankruptcy Code grants discretionary authority to a bankruptcy court to allow the continued use of bank accounts and merchant accounts. See, e.g., In re The Charter Co., 778 F.2d 618 (11th Cir. 1985) (court noted that the bankruptcy court authorized the Debtor to maintain its existing bank accounts); In re Lorber Indus. of Cal., 373 B.R. 663, 665 (B.A.P. 9th Cir. 2007) (discussing that the bankruptcy court allowed the debtor to continue using its prepetition workers' compensation program bank account for the purposes of administering benefits); In re Grant Broad., Inc., 75 B.R. 819, 820 (E.D. Pa. 1987) (court noted an order by the bankruptcy court authorizing use of cash collateral and prepetition bank accounts); In re Charter Behavioral Health Systems, LLC, 292 B.R. 36, 41 (Bankr. D. Del. 2003) (court allowed the Debtor to continue to use its existing bank accounts without the necessity to close all prepetition accounts and open new post-petition accounts); In re Hechinger Inv. Co. Of Del., Inc. 282 B.R. 149, 150 (Bankr. D. Del. 2002) (court entered an order on the petition date authorizing the Debtor to continue to use its existing prepetition bank accounts); In re UAL Corp., 2002 WL 34344255, 1 (Bankr. N.D. Ill. 2002) (court authorized the Debtor, within the reasonable exercise of its business judgment, to continue using all of its bank accounts in existence on the petition date);

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive,
Suite 2100
Reno, NV 89511
775 786 7600

1    In re New York City Shoe, Inc., 78 B.R. 426, 427 (Bankr. E.D. Pa. 1987) (court approved of the

2    debtor's continued routine deposits of post-petition funds into prepetition bank accounts).

3         Pursuant to U.S. Trustee Guideline 4.46, a Chapter 11 debtor in possession must close

4    its prepetition bank accounts and open new accounts.  This requirement is designed to: (a)

5    provide a clear line of demarcation between prepetition and post-petition transactions and

6    operations; and (b) block the inadvertent payment of prepetition claims through the payment of

7    checks drawn prior to the commencement of a debtor's case.  However, courts often deviate

8    from the strict recommendations of Guideline 4.4.6 based upon the unique circumstances of

9    each case and if doing so facilitates a debtor's successful reorganization.  See, e.g., In re The

10   Colad Group, Inc., 324 B.R. 208, 217 (Bankr. W.D.N.Y 2005); In re Charter Behavioral Health

11   Sys., LLC, 292 B.R. at 41.

12        As stated in the Ferguson Declaration, to require the Debtors to close their Bank

13   Accounts and to open new bank accounts would cause substantial disruption and delay in the

14   Debtors' ongoing business operations and would materially and adversely affect the Debtors'

15   business.  To avoid such problems and to ensure as smooth a transition into Chapter 11 as

16   possible, it is imperative that the Debtors be permitted to continue using their current existing

17   Bank Accounts and intercompany cash management system in order to pay common overhead

18   post-petition expenses in the ordinary course of business.

19        The Debtors request that their Bank Accounts be deemed and designated as Debtor-in-

20   Possession Accounts, and that their maintenance and continued use, in the same manner and

21   with the same account numbers, styles and document forms (including checks) as during the

22   prepetition period, be authorized, subject only to: (a) designation of the Bank Accounts as

23   Debtor-in-Possession Accounts; and (b) a prohibition against honoring prepetition checks

24   without specific authorization from this Court and the Debtor.  The Debtors will advise the

25   Banks not to honor checks issued prior to the commencement of this Chapter 11 Case, except as

26   authorized by this Court.  By so advising the Banks, the Debtors will have achieved the goals of

27   the bank-account-closing requirement – (a) establishing a clear demarcation between prepetition

28   and post -petition checks, and (b) blocking the inadvertent payment of prepetition checks–

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive,
Suite 2100
Reno, NV 89511
775 786 7600

8

1  without disrupting the Debtors' ongoing business operations.

2      The Court has the authority to grant the relief requested by the Debtors concerning their

3  Bank Accounts under Section 105 and 363 of the Bankruptcy Code, and it is proper for this

4  Court to grant such relief as it is in the best interest of the creditors of the Debtors' estates.

5  Again, Section 105(a) provides, in pertinent part, that "[t]he court may issue any order, process,

6  or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.

7  § 105(a). Because the maintenance and continued use of the Bank Accounts is crucial to the

8  Debtors' ongoing business operations, and ultimately their reorganization, this Court has the

9  authority to order the relief sough herein by virtue of Section 105(a).

10  **C.**    **The Requirements Of Bankruptcy Rule 6003 Have Been Satisfied And Bankruptcy**

11      **Rule 6004(h) Is Properly Waived**

12      Pursuant to Sections 105(a) and 363(c)(1) of the Bankruptcy Code, the Debtor requests

13  that this Court authorize the Debtors to continue the collection and disbursement of cash in

14  accordance with their existing Bank Accounts. Because the Debtors process a significant

15  number of ACH transactions on a daily basis to facilitate the unique needs of their consumer

16  leasing businesses, any disruption to the Bank Accounts would seriously harm the Debtors and

17  estates.

18      However, Fed.R. Bankr. P. 6003(b) provides "except to the extent that relief is

19  necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the

20  filing of the petition, issue an order granting the following: . . . a motion to use, sell, lease or

21  otherwise incur an obligation regarding property of the estate, including a motion to pay all or

22  part of a claim that arose before filing of the petition. . ." As described above and in the

23  Ferguson Declaration, if the Bank Accounts are disrupted, the Debtors will likely be unable to

24  escape the immediate and irreparable harm that will follow. In order to ensure the Debtors'

25  chances of successfully reorganizing and maximizing value for the Debtors' creditors, this

26  Court should find that the exception set forth in Fed. R. Bankr. P. 6003 applies in this Chapter

27  11 Case.

28      Moreover, Fed. R. Bankr. P. 6004(h) provides that an "order authorizing the use, sale, or

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive,
Suite 2100
Reno, NV 89511
775 786 7600

9

lease of property . . . is stayed until the expiration of 14 days after entry of order, unless the court orders otherwise." In view of the urgency of the relief requested herein and the risk to the Debtors' operations if the Debtor's Bank Accounts are interrupted, a 14 day stay of the relief sought herein is impractical. Accordingly, the Debtors request that this Court waive the stay under Fed. R. Bankr. P. 6004(h) and provide in the order granting the relief sought herein that such order shall be effective immediately *nunc pro tunc* to the Petition Date.

### VI.

### CONCLUSION

WHEREFORE, Debtors respectfully request that the Court enter an order authorizing the maintenance of the Debtors' prepetition Bank Accounts and continued intercompany cash management system as set forth herein and in the <u>Ferguson Declaration</u>, and that any such order include a waiver of the stay under Rule 6004(h); and for such other relief as is just and proper.

DATED this 21st day of April, 2017.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC

*/s/ Stephen R. Harris*

_____
Proposed Attorneys for Debtors

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive,
Suite 2100
Reno, NV 89511
775 786 7600

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive,
Suite 2100
Reno, NV 89511
775 786 7600

Bank Accounts-Balances as of 04-19-2017 End of Day

Bank Accounts

| Bank Name | Bank Address | Bank Account Number | Account Name | Account Type | Balance 04/19/2017 Start of Day | Balance 04/19/2017 End of Day |
|---|---|---|---|---|---|---|
| Wells Fargo | Wells Fargo Bank, N.A. (825) P.O. Box 6995 Portland, OR 97228-6995 | ████5780 | One Road | Checking | $ 26,303.48 | $ 43,481.86 |
| Wells Fargo | Wells Fargo Bank, N.A. (825) P.O. Box 6995 Portland, OR 97228-6995 | ████6753 | WAGS | Checking | $ 80,726.77 | $ 169,282.75 |
| Wells Fargo | Wells Fargo Bank, N.A. (825) P.O. Box 6995 Portland, OR 97228-6995 | ████5553 | I DO | Checking | $ 45,808.04 | $ 45,015.06 |
| Wells Fargo | Wells Fargo Bank, N.A. (825) P.O. Box 6995 Portland, OR 97228-6995 | ████4635 | Bristlecone Holdings | Checking | $ (9,442.89) | $ 150,557.11 |
| Wells Fargo | Wells Fargo Bank, N.A. (825) P.O. Box 6995 Portland, OR 97228-6995 | ████4643 | Bristlecone Financing | Checking | $ 40,413.47 | $ 41,972.53 |
| Wells Fargo | Wells Fargo Bank, N.A. (825) P.O. Box 6995 Portland, OR 97228-6995 | ████6810 | Bristlecone Inc. - Checking | Checking | $ 1,630.61 | $ 1,630.61 |
| Wells Fargo | Wells Fargo Bank, N.A. (825) P.O. Box 6995 Portland, OR 97228-6995 | ████2732 | SPV1 - Outgoing | Checking | $ 136,386.67 | $ 492.91 |
| Wells Fargo | Wells Fargo Bank, N.A. (825) P.O. Box 6995 Portland, OR 97228-6995 | ████7527 | SPV1 - Incoming | Checking | $ - | $ - |
| Wells Fargo | Wells Fargo Bank, N.A. (825) P.O. Box 6995 Portland, OR 97228-6995 | ████3394 | Boon LLC | Checking | $ 3,533.02 | $ 3,533.02 |
| Wells Fargo | Wells Fargo Bank, N.A. (825) P.O. Box 6995 Portland, OR 97228-6995 | ████3394 | Boon LLC | Lockbox | | |
| Utah Community Bank | 820 East 9400 South Sandy, UT 84094 | ████5856 | Bristlecone Holdings LLC | Business Checking Account | $ 0.50 | $ 0.50 |
| | | | | | $ 325,359.67 | $ 455,966.35 |