1  STEPHEN R. HARRIS, ESQ.
2  Nevada Bar No. 001463
   HARRIS LAW PRACTICE LLC
3  6151 Lakeside Drive, Suite 2100
   Reno, NV 89511
4  Telephone: (775) 786-7600
   E-Mail: steve@harrislawreno.com
5  Attorneys for Debtors

6

7              UNITED STATES BANKRUPTCY COURT

8                FOR THE DISTRICT OF NEVADA

9                      * * * * *

10

11

12  IN RE:                          Case No.: BK-17-50472-btb (Chapter 11)
                                    Jointly Administered with:
13  BRISTLECONE, INC., dba BRISTLECONE    17-50473-btb BOONFI LLC
14  HOLDINGS                              17-50474-btb BRISTLECONE LENDING, LLC
                                          17-50475-btb  BRISTLECONE SPV I, LLC
15  ☐ Affects this Debtor.                17-50476-btb I DO LENDING, LLC
                                          17-50478-btb MEDLY, LLC
16  ☒ Affects all Debtors.                17-50479-btb ONE ROAD LENDING, LLC
   ☐ Affects Boonfi LLC                   17-50480-btb WAGS LENDING, LLC
17 ☐ Affects Bristlecone Lending, LLC
18 ☐ Affects Bristlecone SPV I, LLC    MOTION FOR ORDER APPROVING THE
   ☐ Affects I Do Lending, LLC         SALE OF CERTAIN ASSETS FREE AND
19 ☐ Affects Medly, LLC                CLEAR OF ALL LIENS, CLAIMS,
   ☐ Affects One Road Lending, LLC     ENCUMBRANCES AND INTERESTS OR
20 ☐ Affects Wags Lending, LLC         FINANCING TRANSACTIONS
                                       (11 U.S.C. §§363(b) and (f))
21
        Debtors.                       Hearing Date:  July 12, 2017
22                                     Hearing Time:  2:00 p.m.
                                       Est. Time:     15 minutes
23  _____/          Set by:        Calendar Clerk

24

25      Jointly Administered Debtors herein, specifically, BRISTLECONE, INC., dba

26  BRISTLECONE HOLDINGS, a Delaware corporation, and its wholly owned subsidiaries,

27  BOONFI LLC, a Nevada limited liability company, BRISTLECONE LENDING, LLC, a

28  Nevada limited liability company, BRISTLECONE SPV I, LLC, a Nevada limited liability

company, I DO LENDING, LLC, a Nevada limited liability company, MEDLY, LLC, a Nevada limited liability company, ONE ROAD LENDING, LLC, a Nevada limited liability company, and WAGS LENDING, LLC, a Nevada limited liability company (collectively the "Debtors" or "Debtor Entities"), by and through their counsel, STEPHEN R. HARRIS, ESQ., of HARRIS LAW PRACTICE LLC, hereby request the Court to issue an order approving their sale of certain personal property assets free and clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. 11 U.S.C. §§363(b) and (f), and state and allege as follows:

## STATEMENT OF FACTS

1.    The primary assets of the eight (8) Debtor Entities, calculated as of April 18, 2017 ("Petition Date"), are detailed as follows:

a.    Bristlecone, Inc. dba Bristlecone Holdings ("Bristlecone") has bank accounts with a total balance of $152,188.22; $0.00 accounts receivable; investments consisting of 100% member's interest in BoonFi LLC, value unknown; 100% member's interest in Bristlecone Lending, LLC, value unknown; 100% member's interest in Bristlecone SPV I, LLC, value unknown; 100% member's interest in I Do Lending, LLC, value unknown; 100% member's interest in Medly, LLC, value unknown; and 100% member's interest in One Road Lending, LLC, value unknown; 100% member's interest in Wags Lending, LLC, value unknown. Bristlecone has office furniture, fixtures and equipment valued at $119,610.20 (fair market value estimate); office equipment including all computer equipment and communication systems, equipment and software, including miscellaneous computer monitors, filing cabinets, cubicles, appliances, headsets, dishware, office décor, chairs, telephones, office supplies, kiosks, desks, and other office equipment valued at $6,249.56. Leasehold improvements with a value of $0.00. Intangibles and intellectual property consisting of origination/pricing logic and algorithms for approval and pricing and customized applications and lease agreements for all eight (8) Debtor Entities; trademarks for all eight (8) Debtor Entities; for all eight (8) Debtor Entities, the Internet domain names including all domain names owned by Bristlecone, Google accounts, websites including all website historical data and logs, and website infrastructure, custom built Salesforce infrastructure, custom built Tableau dashboards and workbooks,

product development records and historical data (including but not limited to those located in or utilizing Youtrack, Wrike, Asana, Slack, and other first or third party software or applications), custom built communication templates (including but not limited to all email templates, all Mailchimp templates, all Mandrill templates, letter and other form documents, all training materials, all marketing materials, all promotional offer templates, and other communication templates designed to communicate to a consumer, retailer, third-party vendor, strategic partner, or employee/independent contractor), marketing source materials and data (including but not limited to website content from the websites of all eight (8) Debtor Entities, marketing materials and contacts and lists from Constant Contact, and all other materials and data used to develop marketing materials), customer and retailer historical data (including but not limited to all customer application historical data, all customer lease agreement historical data, all customer communication records and historical data, all customer payment histories, all customer credit information, all retailer communication records and historical data, historical data collected on all present and former retailers for all eight (8) Debtor Entities, business contact lists for all eight (8) Debtor Entities, Google analytics historical data for all eight (8) Debtor Entities, 8x8 fax number and stored data, all recorded phone calls for all eight (8) Debtor Entities, and all other customer and retailer historical data developed or kept for any or all of the eight (8) Debtor Entities), employee communication history and data (including but not limited to communications via Slack, all data stored on tablets and/or computers, employee/independent contractor files, and all other history and data of communications between Bristlecone employees/independent contractors, and history and data of communications between Bristlecone employees/independent contractors and third party vendors servicing or acting on behalf of as agents for Bristlecone or any of the eight (8) Debtor Entities), legal/compliance records and data (including but not limited to policies and procedures, merchant/retailer agreements, employee handbooks and training materials, employee/independent contractor files, third party vendor handbooks and training materials, legal research, legal memos, legal opinions, and any other legal or compliance records and data developed or maintained by Bristlecone or any of the eight (8) Debtor Entities), custom built software platform (including

but not limited to software platforms for underwriting, decision making, customer management, lease management, customer/retailer communication, application program interface, general contract management, retailer training, permissions management, state-specific compliance, payment processing, funding management, customer relationship management integration, accounting integration, credit bureau integrations, fraud detection/management, deployment/continuous integration management, electronic signature management/integration, pet warranty management, FAQ management, authentication management, and all other customer built software platforms), custom built Alteryx workflows, custom built software tools (including but not limited to phone call archiver, investor website, tablet power manager, standalone application program interface architecture, buyout calculator website, and all other custom built software tools), customized webpages, cost and terms software, values unknown; miscellaneous goodwill, values unknown; the medical/hearing aid, furniture, auto, bridal, and pet industry relationships (point of sale/strategic relationships), values unknown; Barkify.Dog trademark and intellectual property, values unknown; all the non-competes from the employment contracts for all existing employees, values unknown. Additionally, causes of action against third parties are detailed as follows: potential causes of action for intentional interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown; Potential causes of action for breach of contract against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for breach of covenant of good faith and fair dealing against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown; Potential causes of action for bad faith lender liability and related claims against Westminster National Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values unknown; Potential causes of action for misappropriation of confidential information and trade secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding,

1  Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown;
2  Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC;
3  Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown; and potential causes
4  of action for intentional interference with prospective economic advantage against Nextep
5  Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis;
6  Rob Cook and Dusty Wunderlich, value unknown.  Also, Bristlecone has secured claims in the
7  amount of $0.00, and $3,404,036.19 in general unsecured debts, which includes an unknown
8  claim belonging to Monterey Financial Services, Inc., arising from a certain receivables
9  purchase agreements.

10         b.   BoonFi LLC ("BoonFi") has bank accounts with a total balance of $3,533.02;
11  accounts receivable in the amount of $47,416.94[1].  BoonFi does not have any machinery, office
12  equipment, fixtures, goodwill, or intangibles and intellectual property. Additionally, BoonFi has
13  third party causes of action detailed as follows:  Potential causes of action for intentional
14  interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC;
15  Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values
16  unknown;  Potential causes of action for breach of contract against Nextep Funding, LLC;
17  Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs,
18  Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown;
19  Potential causes of action for breach of covenant of good faith and fair dealing against Nextep
20  Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown; Potential
21  causes of action for bad faith lender liability and related claims against Westminster National
22  Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values
23  unknown;  Potential causes of action for misappropriation of confidential information and trade
24  secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob
25  Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding,
26  Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown;
27  Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC;

28

[1]  The estimated fair market value for the accounts receivable and other assets listed on each Debtors' Schedules and in this Motion do not reflect actual book balances as reflected on the Debtors' internal financial statements prepared according to GAAP.

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
775 786 7600

Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown; and potential causes of action for intentional interference with prospective economic advantage against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown. Also, BoonFi has a secured claim owing to Monterey Financial Services, Inc., arising from certain lease contracts, values unknown. BoonFi has general unsecured claims totaling $3,494.82, with priority unsecured claims totaling $3,859.97.

          c.     Bristlecone Lending, LLC ("Lending") has bank accounts with a total balance of $41,972.53; accounts receivable total $1,365,941.69. Lending does not have any machinery, office equipment, fixtures, goodwill, or intangibles and intellectual property. Additionally, Lending has third party causes of action detailed as follows:  Potential causes of action for intentional interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown;  Potential causes of action for breach of contract against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown;  Potential causes of action for breach of covenant of good faith and fair dealing against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown;  Potential causes of action for bad faith lender liability and related claims against Westminster National Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values unknown;  Potential causes of action for misappropriation of confidential information and trade secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding, Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown;  Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown; and  potential causes of action for intentional interference with prospective economic advantage against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC;

Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, value unknown. Lending has general unsecured claims totaling $17,570.49. Lending has a secured claim owing to Monterey Financial Services, Inc., arising from certain lease contracts, values unknown.

        d.     Bristlecone SPV I, LLC ("SPV") has bank accounts with a total balance of $492.91; SPV has segregated funds held by FRS BC, LLC as assignee to Princeton Alternative Income Fund in an unknown financial institution in the amount of $1,183,159.60; accounts receivable in the amount of $6,573,036.18. SPV does not have any machinery, office equipment, fixtures, goodwill, or intangibles and intellectual property. Additionally, SPV has third party causes of action detailed as follows: Potential causes of action for intentional interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, value unknown. Potential causes of action for breach of contract against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for breach of covenant of good faith and fair dealing against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown; Potential causes of action for bad faith lender liability and related claims against Westminster National Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values unknown; Potential causes of action for misappropriation of confidential information and trade secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding, Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown; and potential causes of action for intentional interference with prospective economic advantage against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown. Also, SPV's secured claim owing are as follows: secured claim owing to Monterey Financial Services, Inc., arising from certain lease

1    contracts, values unknown; a secured claim owing to Westminster National Capital Co. in the

2    amount of $10,549,306.11, secured by Wells Fargo Bank checking account ending in 2757; a

3    secured claim owing to Westminster National Capital Co. secured by Wells Fargo Bank

4    checking account ending in 2732, value unknown; a secured claim owing Westminster National

5    Capital Co. secured by segregated funds held by FRS BC, LLC as assignee to Princeton

6    Alternative Income Fund in unknown financial institution, value unknown.   SPV has $0.00

7    owing to general unsecured creditors, with an unknown general unsecured claim owing to

8    Monterey Financial Services, Inc.

9          e.    I Do Lending, LLC ("I Do") has bank accounts with a total balance of

10   $45,015.06; accounts receivable are $721,121.26.  I Do does not have any machinery, office

11   equipment, fixtures, goodwill, or intangibles and intellectual property. Additionally, I Do has

12   third party causes of action detailed as follows:  Potential causes of action for intentional

13   interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC;

14   Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values

15   unknown;   Potential causes of action for breach of contract against Nextep Funding, LLC;

16   Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs;

17   Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown;

18   Potential causes of action for breach of covenant of good faith and fair dealing against Nextep

19   Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown;   Potential

20   causes of action for bad faith lender liability and related claims against Westminster National

21   Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values

22   unknown;  Potential causes of action for misappropriation of confidential information and trade

23   secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob

24   Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding,

25   Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown;

26   Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC;

27   Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown; and potential causes

28   of action for intentional interference with prospective economic advantage against Nextep

Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis;
Rob Cook and Dusty Wunderlich, values unknown. Also, I Do has a secured claim owing to
Monterey Financial Services, Inc., arising from certain lease contracts, values unknown. I Do
has general unsecured claims owing in the amount of $9,158.21.

        f.    Medly, LLC ("Medly"), does not have a bank account. Medly has no
accounts receivable. Medly does not have any machinery, office equipment, fixtures, goodwill,
or intangibles and intellectual property. Additionally, Medly has third party causes of action
detailed as follows: Potential causes of action for intentional interference with contractual
relations against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC;
Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown; Potential causes of
action for breach of contract against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul;
Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Matthew Hack, Doug Harding, LBC
Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for breach of
covenant of good faith and fair dealing against Nextep Funding, LLC; Nextep Finance, LLC;
Sam Paul and Brian Davis, values unknown; Potential causes of action for bad faith lender
liability and related claims against Westminster National Capital Co., LLC and Phil Burgess and
their assignees or successors-in-interest, values unknown; Potential causes of action for
misappropriation of confidential information and trade secrets against Nextep Funding, LLC;
Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty
Wunderlich; Saul Perez; Lucas Combs, Doug Harding, Matthew Hack, Anthony Malanga, LBC
Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for defamation
against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul
and Brian Davis, values unknown; and potential causes of action for intentional interference
with prospective economic advantage against Nextep Funding, LLC; Nextep Finance, LLC;
Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values
unknown. Medly has a secured claim owing to Monterey Financial Services, Inc., arising from
certain lease contracts, values unknown, and general unsecured claims totaling $0.00.

        g.    One Road Lending, LLC ("One Road") has bank accounts with a total

balance of $43,481.86; accounts receivable is $2,100,134.44. One Road does not have any machinery, office equipment, fixtures, goodwill, or intangibles and intellectual property. Additionally, One Road has third party causes of action detailed as follows: Potential causes of action for intentional interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown; Potential causes of action for breach of contract against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for breach of covenant of good faith and fair dealing against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown; Potential causes of action for bad faith lender liability and related claims against Westminster National Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values unknown; Potential causes of action for misappropriation of confidential information and trade secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding, Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown; and potential causes of action for intentional interference with prospective economic advantage against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown. Also, One Road has a secured claim owing to Monterey Financial Services, Inc., arising from certain lease contracts, values unknown. One Road has general unsecured claims owing in the amount of $33,512.34.

      h.    Wags Lending, LLC ("Wags") has bank accounts with a total balance of $169,282.75; accounts receivable is $7,227,559.03. Wags does not have any machinery, office equipment, fixtures, goodwill, or intangibles and intellectual property. Additionally, Wags has third party causes of action detailed as follows: Potential causes of action for intentional

interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown;  Potential causes of action for breach of contract against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for breach of covenant of good faith and fair dealing against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown;  Potential causes of action for bad faith lender liability and related claims against Westminster National Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values unknown;  Potential causes of action for misappropriation of confidential information and trade secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding, Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown;  and potential causes of action for intentional interference with prospective economic advantage against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown.  Wags has general unsecured liabilities owing in the amount of $147,759.28, with a secured claim owing to Monterey Financial Services, Inc., arising from certain lease contracts, values unknown.

2.    The secured and general unsecured claims that have been obligated to by the eight (8) Debtor Entities as of the Petition Date, are detailed as follows:

a.    Monterey Financial Services, Inc. Receivables Purchase Agreement dated January 13, 2014, with Wags, LLC, and a Receivables Purchase Agreement dated May 20, 2015, with Wags, LLC.  The estimated total amount owing is $2,103,511.03, including the secured claims detailed in Paragraphs 2.a through 2.e herein.  A UCC-1 was filed on February 20, 2014, in favor of Monterey Financial Services, Inc., against collateral consisting largely of all the assets of Wags Lending, LLC, including all accounts, accounts receivables, chattel paper,

1  contract rights, rights to payment, letters of credit, documents, and proceeds Additionally,

2  Monterey Receivables Funding, LLC, has a filed UCC-1 dated February 20, 2014, secured

3  against certain collateral of Wags, LLC, including all accounts, accounts receivables, chattel

4  paper, contract rights, rights to payment, letters of credit, documents and proceeds.

5         b.    A UCC-1 was filed on February 20, 2014, by Monterey Financial

6  Services, Inc.  Profit Sharing Plan And Trust, secured against certain assets of Wags Lending,

7  LLC, including all accounts, accounts receivables, chattel paper, contract rights, rights to

8  payment, letters of credit, documents and proceeds.

9         c.  Monterey Financial Services, Inc. has a UCC-1 secured with respect to assets

10  of Bristlecone Financing, LLC, filed on June 23, 2014, including all accounts, accounts

11  receivables, chattel paper, contract rights, rights to payment, letters of credit, documents, and

12  proceeds.

13         d.    Monterey Financial Services, Inc. Profit Sharing Plan and Trust has a

14  filed UCC-1 secured against certain assets of Bristlecone Financing, LLC, including all

15  accounts, accounts receivables, chattel paper, contract rights, rights to payment, letters of credit,

16  documents and proceeds. .

17         e.    Monterey Receivables Funding, LLC,  has a filed UCC-1 dated June 23,

18  2014, securing certain assets of Bristlecone Financing, LLC, including all accounts, accounts

19  receivables, chattel paper, contract rights, rights to payment, letters of credit, documents and

20  proceeds.

21         f.    Strategic Funding, Inc. had a secured claim with respect to Bristlecone

22  Holdings, LLC and Wags Lending, LLC, secured by a UCC-1 filed on March 16, 2015, secured

23  against certain assets, including all accounts, accounts receivables, chattel paper, contract rights,

24  rights to payment, letters of credit, documents and proceeds.  Without taking a position as to

25  whether the Strategic Funding, Inc. claim has been paid in full, Westminster National Capital

26  Co., LLC purports to hold an assignment from Strategic Funding, Inc., filed on December 3,

27  2015.  Debtors assert that this secured claim has been paid in full.

28         g.  Westminster National Capital Co., LLC, has a filed UCC-1 dated November

14, 2015, in favor of Wags, LLC and Wags Lending, LLC, including all accounts, accounts receivables, chattel paper, contract rights, rights to payment, letters of credit, documents and proceeds. The estimated amount owing is $10,895,564.14, with an estimated general unsecured claim deficiency of $2,500,000 to $3,500,000.

**ASSETS TO BE SOLD**

The Debtors' assets shall be sold in two (2) groups, detailed as follows:

a. <u>Group #1 Assets</u>: GAS HOLE, LLC, a Nevada limited liability company, or assignee ("Gas Hole"), shall purchase the following described personal property assets for the sum of One Hundred Fifty Thousand Dollars ($150,000): Certain office equipment, including all computer equipment and communication systems, equipment and software, including miscellaneous computer tablets, computer monitors, filing cabinets, cubicles, appliances, headsets, dishware, office décor, chairs, telephones, office supplies, kiosks, desks, and other office equipment; Intangibles and intellectual property consisting of origination/pricing logic and algorithms for approval and pricing and customized applications and lease agreements for all eight (8) Debtor Entities; trademarks for all eight (8) Debtor Entities; for all eight (8) Debtor Entities, the Internet domain names including all domain names owned by Bristlecone, Google accounts, websites including all website historical data and logs, and website infrastructure, custom built Salesforce infrastructure, custom built Tableau dashboards and workbooks, product development records and historical data (including but not limited to those located in or utilizing Youtrack, Wrike, Asana, Slack, and other first or third party software or applications), custom built communication templates (including but not limited to all email templates, all Mailchimp templates, all Mandrill templates, letter and other form documents, all training materials, all marketing materials, all promotional offer templates, and other communication templates designed to communicate to a consumer, retailer, third-party vendor, strategic partner, or employee/independent contractor), marketing source materials and data (including but not limited to website content from the websites of all eight (8) Debtor Entities, marketing materials and contacts and lists from Constant Contact, and all other materials and data used to develop marketing materials), customer and retailer historical data (including but not limited to all

customer application historical data, all customer lease agreement historical data, all customer communication records and historical data, all customer payment histories, all customer credit information, all retailer communication records and historical data, historical data collected on all present and former retailers for all eight (8) Debtor Entities, business contact lists for all eight (8) Debtor Entities, Google analytics historical data for all eight (8) Debtor Entities, 8x8 fax number and stored data, all recorded phone calls for all eight (8) Debtor Entities, and all other customer and retailer historical data developed or kept for any or all of the eight (8) Debtor Entities), employee communication history and data (including but not limited to communications via Slack, all data stored on tablets and/or computers, employee/independent contractor files, and all other history and data of communications between Bristlecone employees/independent contractors, and history and data of communications between Bristlecone employees/independent contractors and third party vendors servicing or acting on behalf of as agents for Bristlecone or any of the eight (8) Debtor Entities), legal/compliance records and data (including but not limited to policies and procedures, merchant/retailer agreements, employee handbooks and training materials, employee/independent contractor files, third party vendor handbooks and training materials, legal research, legal memos, legal opinions, and any other legal or compliance records and data developed or maintained by Bristlecone or any of the eight (8) Debtor Entities), custom built software platform (including but not limited to software platforms for underwriting, decision making, customer management, lease management, customer/retailer communication, application program interface, general contract management, retailer training, permissions management, state-specific compliance, payment processing, funding management, customer relationship management integration, accounting integration, credit bureau integrations, fraud detection/management, deployment/continuous integration management, electronic signature management/integration, pet warranty management, FAQ management, authentication management, and all other customer built software platforms), custom built Alteryx workflows, custom built software tools (including but not limited to phone call archiver, investor website, tablet power manager, standalone application program interface architecture, buyout calculator website, and all other

custom built software tools), customized webpages, cost and terms software; miscellaneous goodwill; the medical/hearing aid, furniture, auto and bridal industry relationships (point of sale/strategic relationships); Barkify.Dog trademark and intellectual property; all the non-competes from the employment contracts for all existing employees, and all potential civil claims against third parties listed in the Schedules of Assets and Liabilities, as may be amended, filed with the Court.

b. Group #2 Assets: Additionally, a purchaser to be identified prior to or at the sale hearing shall purchase the following described personal property assets: Intangibles and intellectual property consisting of miscellaneous goodwill with respect to the pet industry relationships; and all point of sale relationships with respect to the pet leases. The total value of Group #2 Assets is estimated at $250,000.00 to $500,000.00. (Group #1 Assets and Group #2 Assets are collectively referred to as the "Assets").

## BIDDING PROCEDURES AT THE HEARING

Debtor shall allow interested bidders the opportunity to purchase Group #1 Assets and/or Group #2 Assets at the duly noticed sale hearing based upon the following bidding terms and conditions:

A.    **Minimum Opening Bid**:  Interested bidders for Group #1 Assets shall be required to submit a minimum opening bid of $155,000 to successfully commence an overbid process above the current offer of $150,000 by Gas Hole.  The minimum opening bid for the Group #2 Assets shall be $250,000.

B.    **Escrow Deposit**:  The winning bidder for each group of Assets shall be required to deposit with cashier's check or bank wire with the Harris Law Practice LLC Client Trust Account the sum of One Hundred Thousand Dollars ($100,000) within twenty-four (24) hours after the hearing on the Motion, which deposit is deemed non-refundable and forfeited to the Debtors in the event the successful bidder fails to timely close for any reason;

C.    **Proof of Funds**:  At the hearing, any interested bidders must be able to provide adequate proof to the Debtors and Bankruptcy Court of the ability to fund the escrow

1  deposit and pay the final purchase price within three (3) business days of the hearing;

2  D.        **Minimum bidding increments**:  The minimum bidding increments shall consist

3  of no less than Five Thousand Dollars ($5,000.00);

4  E.        **Close of Escrow**:  Any successful overbidder must be able to close escrow

5  within three (3) business days from the date of hearing on the Motion.

6  F.        **Credit Bidding**:  No credit bids shall be allowed.

7  <u>**BASIS FOR RELIEF**</u>

8  A.        <u>The Sale Is a Product of the Debtors' Reasonable Business Judgment</u>

9        Section 363(b)(1) of the Bankruptcy Code provides: "the Trustee, after notice and a

10  hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

11  estate."  Section 105(a) of the Bankruptcy Code provides in relevant part: "The Court may issue

12  any order, process, or judgment that is necessary or appropriate to carry out the provisions of

13  this title."  Virtually all courts have held that approval of a proposed sale or disposition of assets

14  of a debtor under section 363 of the Bankruptcy Code outside the ordinary course of business

15  and prior to the confirmation of a plan of reorganization is appropriate if the a court finds that

16  the transaction represents a reasonable business judgment on the part of the trustee or debtor-in-

17  possession.  *See* <u>In re Abbotts Dairies of Pa.</u>, 788 F.2d 143 (3d Cir. 1986); <u>In re Delaware &</u>

18  <u>Hudson Ry. Co.</u>, 124 B.R. 169, 476 (D. Del. 1991) (holding that the following non-exclusive

19  list of factors may be considered by a court in determining whether there is a sound business

20  purpose for an asset sale: the proportionate value of the asset to the estate as a whole; the

21  amount of elapsed time since the filing; the effect of the proposed disposition of [sic] the future

22  plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised

23  values of the property; and whether the asset is decreasing or increasing in value"); <u>In re Lionel</u>

24  <u>Corp.</u>, 722 F.2d 1063 (2d Cir. 1983); <u>Stephens Indus., Inc. v. McClung</u>, 789 F.2d 386, 391 (6th

25  Cir. 1986); <u>In re Ionosphere Clubs, Inc.</u>, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989). <u>Walter v.</u>

26  <u>Sunwest Bank (In re Walter)</u>, 83 B.R. 14, 17 Bankr. Ct. Dec. 101 (B.A.P. 9th Cir. Cal. 1988).

27  When a debtor articulates a reasonable basis for its business decisions, "Courts will generally

28  not entertain objections to the debtor's conduct."  <u>Committee of Asbestos-Related Litigants v.</u>

Johns-Manville Corp. (In re Johns- Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D. N.Y. 1986).

The "sound business reason" test requires a trustee or debtor-in-possession to establish four elements: (1) that a sound business purpose justifies the transaction outside the ordinary course of business; (2) that accurate and reasonable notice has been provided to interest persons; (3) that the trustee or the debtor-in-possession has obtained a fair and reasonable price; and (4) good faith.  In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D. Penn. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); see also Stephens Indus., 789 F.2d 386, 390 (6th Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2nd Cir. 1983).

The paramount goal in any proposed sale or use of property of the estate is to maximize the proceeds received by the estate.  See, e.g., In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); Integrated Resources, 147 B.R. 650, 659 (S.D. NY 1992) ("It is a well-established principle of bankruptcy law that the… [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.")  (quoting In re Atlanta Packaging Prods., Inc., 99 BR. 124, 130 (Bankr. N.D. Ga. 1988)).  As long as the transaction appears to enhance a debtor's estate, court approval of a trustee's decision should only be withheld if the trustee's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.  GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd., 331 B.R. 251, 255 (N.D. Tex. 2005); In re Lajijani, 325 B.R. 282, 289 (9th Cir. B.A.P. 2005); In re WPRV-TV, Inc., 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

In the instant case, the Debtors are all currently operating as a going concern.  However, secured creditors Monterey Financial Services, Inc., Monterey Financial Services, Inc. Profit Sharing Plan and Trust, Monterey Receivables Funding, LLC and FRS BC, LLC as assignee of Westminster National Capital Co., LLC, are all claiming cash collateral interests in most of the

revenue derived from the Debtors' lease contracts.   To date, the Debtors have not been able to obtain consent of any of the secured creditors for the use of cash collateral. Based on ongoing operating expenses, Debtors will most likely run out of cash in about four weeks from now.  As a result of the nature of the Debtors' assets that are being sold herein, the Debtors can only maximize the value of their assets if they are still operating as a going concern when the assets are sold.   In light of the imminent danger the Debtors are facing in running out of cash to continue operations, it is the Debtors' best business judgment that the assets be sold at this time in the manner proposed herein.

    B.   The Bidding Procedures Are Appropriate and Will Maximize the Value Received for the Assets

As discussed above, the paramount goal of any proposed sale or use of property of the estate is to maximize the proceeds received by the estate.  To that end, courts recognize that procedures intended to enhance competitive bidding are consistent with this goal and therefore are appropriate in the context of bankruptcy sales.  See, e.g. In re Fin'l News Network, Inc., 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets… [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

The bidding procedures proposed in this Motion establish parameters under which the value of the Assets may be tested at the sale hearing, thus ensuring a competitive and fair bidding process and increasing the likelihood that the Debtors' creditors will receive the greatest possible distribution.  Prior to the sale hearing, the Debtors will market the assets through their industry contacts and will also publish the Notice of this Motion in several widely circulated local and/or national publications.  The bidding procedures allow the Debtors to undertake the sale of the Assets in as expeditious and efficient manner as possible, which the Debtors believe is essential to maximizing the value of their estate for their creditors.

The Debtors also believe that the proposed sale and bidding procedures will promote active bidding from seriously interested parties and will dispel any doubt as to the best and highest offer reasonably available for the Assets.   In particular, the proposed sale and

overbidding will allow the Debtors to conduct the sale under the auspices of the Bankruptcy Court in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction.  Further, the proposed bidding procedures provide the Debtors with the opportunity to consider all of the highest and best offer(s) for the Assets.

In sum, the Debtors believe that the proposed sale and bidding procedures are consistent with the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.

The Bankruptcy Rules require that notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business be given pursuant to Fed. R. Bankr. P. 2002(a)(2), (c)(1), (i), and (k) and Fed. R. Bankr. P. 6004(a).  Taken together, these provisions of Bankruptcy Rule 2002 require notification to creditors of the proposed sale of the Debtors' assets, including a disclosure of the time and place of an auction, the terms and conditions of a sale, and the deadline for filing any objections.  Fed. R. Bankr. P. 2002(a)(2), (c)(1), (i), and (k).

The Debtors submit that this Motion and corresponding Notice filed concurrently herewith, fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the sale to the Debtors' creditors and other interested parties, as well as to those parties who have expressed an interest, or may express an interest, in bidding on the Assets.  The proposed time frame between the filing of this Motion, the commencement of the bidding process and the sale hearing will provide interested purchasers sufficient time to participate in the bidding process.

C.    Any Sale of the Assets Should Be Free and Clear of Liens, Claims, Encumbrances, and Interests

Pursuant to section 363(f) of the Bankruptcy Code, the Debtors seek authority to sell and transfer their rights, interests and title in the Assets to the success buyer(s) free and clear of all liens, claims, encumbrances, and interests, with such liens, claims, encumbrances, and interests to attach to the proceeds of the sale of the Assets, subject to any rights and defenses of the

1   Debtors and other parties in interest with respect thereto.

2        Section 363(f) of the Bankruptcy Code provides in pertinent part:

3             The trustee may sell property under subsection (b) or (c) of this Section free and clear

4             of any interest in such property of an entity other than the estate only if-

5             (1) applicable nonbankruptcy law permits sale of such property free and clear of such

6                  interest;

7             (2) such entity consents;

8             (3) such interest is a lien and the price at which such property is to be sold is greater

9                  than the aggregate value of all liens on such property;

10            (4) such interest is in a bona fide dispute; or

11            (5) such entity could be compelled, in a legal or equitable proceeding, to accept a

12                 money satisfaction of such interest.

13  11 U.S.C. §363 (f). *See also* In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that section

14  363(f) written in disjunctive; court may approval sale "free and clear" provided at least one of

15  the requirements is met).

16       The Debtors also seek an order of the Court prohibiting all persons holding liens, claims,

17  encumbrances, and other interests, including rights or claims based on any successor or

18  transferee liability, from asserting them against any successful Buyer under Section 363(f) of

19  the Bankruptcy Code.   In this case, the Debtors do not believe that any of the assets being sold

20  are encumbered by any secured creditor.   Any claims by the Monterey entities and FRS BC/

21  Westminster are secured by certain designated lease contracts, and not by any of the personal

22  property assets being sold at this time.

23       Any holders of liens, claims, encumbrances, or interests who do not object or who

24  withdraw their objections to the sale or the Motion are deemed to have consented to the Motion

25  and sale pursuant to Bankruptcy Code §363(f)(2).

26  **REQUEST FOR RELIEF FROM BANKRUPTCY RULE 6004**

27       Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of

28  property… is stayed until the expiration of 14 days after entry of the order, unless the court

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
775 786 7600

1  orders otherwise." Fed. R. Bankr. P. 6004(h).

2         Courts in this district routinely waive the stay with respect to bidding procedures and

3  sale orders. See, e.g., In re Nathan L. Topol, Case No. 12-51014-gwz (Bankr. D. Nev. Oct. 30,

4  2015); In re David M. Semas and Susan O. Semas, Case No. 13-52337-btb (Bankr. D. Nev.

5  April 5, 2017); In re Western Funding, Inc., Case No. 13-1758-LED (Bankr. D. Nev. Nov. 27,

6  2013); In re Xyience Incorporated, Case No. 08-10474-MKN (Bankr. D. Nev. April 7, 2008); In

7  re Rodeo Creek Gold, Inc., Case No. 13-50301-MKN (Bankr. D. Nev. May 3, 2013); In re

8  November 2005 Land Investors, Case No. 11-20704-MKN (Bankr. D. Nev. Dec. 15, 2011); In

9  re Western Funding, Inc., Case No. 13-1758-LED (Bankr. D. Nev. Jan. 6, 2014). The Debtors

10 respectfully submit that waiver of the stay is appropriate and justified. The proposed bidding

11 procedures and the timeline for the hearing on this Motion, balance the due process protections

12 of the Bankruptcy Code with the reality of the Debtors' financial situation and their need to

13 quickly maximize and realize the value of the Assets. As a result, the stay should be waived,

14 and the Debtors should be authorized to act in accordance with the Bidding Procedures as

15 expeditiously as possible.

16                    **SAFE HARBOR FOR BUYER UNDER §363(m)**

17        Lastly, the proposed purchase offer by Gas Hole, LLC of Group #1 Assets was

18 negotiated in good faith, and the Debtors believe its terms are fair and reasonable as dictated by

19 current market conditions.    Additionally, the proposed bidding procedures provide the

20 opportunity for other interested parties to purchase Group #1 Assets and/or Group #2 Assets in a

21 fair and open Court supervised process. Accordingly, the Debtors would also request that this

22 Court make its finding that any successful buyer is a good faith purchaser and subject to the

23 protections afforded it pursuant to 11 U.S.C. §363(m).

24                              **CONCLUSION**

25        Wherefore, the Debtors respectfully request that this Court enter its Order: 1)

26 authorizing the sale of certain assets identified in this Motion as Group #1 Assets to Gas Hole,

27 LLC, a Nevada limited liability company, or assignee, for the total price of $150,000 cash,

28 subject to the overbid procedures and terms and conditions set forth in this Motion; 2)

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
775 786 7600

authorizing the sale of Group #2 Assets to any successful buyer to be identified prior to or at the hearing on this Motion subject to the bidding procedures and terms and conditions set forth in this Motion; 3) granting relief from the 14 day stay requirements of Rule 6004; and 4) finding that any successful buyer of the Assets is a good faith purchaser and subject to the "safe harbor" protections of 11 U.S.C. §363(m); and 5) for such other and further relief as is just and proper.

DATED this 14th day of June, 2017.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC

/s/ Stephen R. Harris
_____
Attorneys for Jointly Administered Debtors