STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600
E-Mail: steve@harrislawreno.com
Attorneys for Jointly Administered Debtors

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| IN RE:<br><br>BRISTLECONE, INC., dba BRISTLECONE HOLDINGS<br><br>☐ Affects this Debtor.<br>☒ Affects all Debtors.<br>☐ Affects Boonfi LLC<br>☐ Affects Bristlecone Lending, LLC<br>☐ Affects Bristlecone SPV I, LLC<br>☐ Affects I Do Lending, LLC<br>☐ Affects Medly, LLC<br>☐ Affects One Road Lending, LLC<br>☐ Affects Wags Lending, LLC<br><br>　　　Debtors.<br><br>_____ / | Case No.: BK-17-50472-btb (Chapter 11)<br>Jointly Administered with:<br>17-50473-btb BOONFI LLC<br>17-50474-btb BRISTLECONE LENDING, LLC<br>17-50475-btb  BRISTLECONE SPV I, LLC<br>17-50476-btb I DO LENDING, LLC<br>17-50478-btb MEDLY, LLC<br>17-50479-btb ONE ROAD LENDING, LLC<br>17-50480-btb WAGS LENDING, LLC<br><br>**AMENDED MOTION FOR ORDER APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS OR FINANCING TRANSACTIONS**<br>**(11 U.S.C. §§363(b) and (f))**<br><br>Hearing Date:　July 12, 2017<br>Hearing Time:　2:00 p.m.<br>Est. Time:　　 30 minutes<br>Set by:　　　 Calendar Clerk |

　　　Jointly Administered Debtors herein, specifically, BRISTLECONE, INC., dba BRISTLECONE HOLDINGS, a Delaware corporation, and its wholly owned subsidiaries, BOONFI LLC, a Nevada limited liability company, BRISTLECONE LENDING, LLC, a Nevada limited liability company ("Lending"), BRISTLECONE SPV I, LLC, a Nevada limited

liability company ("SPV"), I DO LENDING, LLC, a Nevada limited liability company ("I Do"), MEDLY, LLC, a Nevada limited liability company ("Medly"), ONE ROAD LENDING, LLC, a Nevada limited liability company ("One Road"), and WAGS LENDING, LLC, a Nevada limited liability company ("Wags") (all collectively the "Debtors" or "Debtor Entities"), by and through their counsel, STEPHEN R. HARRIS, ESQ., of HARRIS LAW PRACTICE LLC, hereby request the Court to issue an order approving their sale of certain personal property assets free and clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. 11 U.S.C. §§363(b) and (f).  On June 14, 2017, the Debtors filed their MOTION FOR ORDER APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS OR FINANCING TRANSACTIONS (11 U.S.C. §§363(b) and (f) (Docket No. 76).  Since that time, certain factors have changed with respect to the proposed sale, and the Debtors hereby amend their prior sale motion as follows:

## STATEMENT OF FACTS

1.  The primary assets of the eight (8) Debtor Entities, calculated as of April 18, 2017 ("Petition Date"), are detailed as follows:

        a.  Bristlecone, Inc. dba Bristlecone Holdings ("Bristlecone") has bank accounts with a total balance of $152,188.22;  $0.00 accounts receivable; investments consisting of 100% member's interest in BoonFi LLC, value unknown; 100% member's interest in Bristlecone Lending, LLC, value unknown; 100% member's interest in Bristlecone SPV I, LLC, value unknown;  100% member's interest in I Do Lending, LLC, value unknown; 100% member's interest in Medly, LLC, value unknown; and 100% member's interest in One Road Lending, LLC, value unknown; 100% member's interest in Wags Lending, LLC, value unknown.  Bristlecone has office furniture, fixtures and equipment valued at $119,610.20 (fair market value estimate); office equipment including all computer equipment and communication systems, equipment and software, including miscellaneous computer monitors, filing cabinets, cubicles, appliances, headsets, dishware, office décor, chairs, telephones, office supplies, kiosks, desks, and other office equipment valued at $6,249.56.  Leasehold improvements with a value

of $0.00.    Intangibles and intellectual property consisting of origination/pricing logic and algorithms for approval and pricing and customized applications and lease agreements for all eight (8) Debtor Entities; trademarks for all eight (8) Debtor Entities;  for all eight (8) Debtor Entities, the Internet domain names including all domain names owned by Bristlecone, Google accounts, websites including all website historical data and logs, and website infrastructure, custom built Salesforce infrastructure, custom built Tableau dashboards and workbooks, product development records and historical data (including but not limited to those located in or utilizing Youtrack, Wrike, Asana, Slack, and other first or third party software or applications), custom built communication templates (including but not limited to all email templates, all Mailchimp templates, all Mandrill templates, letter and other form documents, all training materials, all marketing materials, all promotional offer templates, and other communication templates designed to communicate to a consumer, retailer, third-party vendor, strategic partner, or employee/independent contractor), marketing source materials and data (including but not limited to website content from the websites of all eight (8) Debtor Entities, marketing materials and contacts and lists from Constant Contact, and all other materials and data used to develop marketing materials), customer and retailer historical data (including but not limited to all customer application historical data, all customer lease agreement historical data, all customer communication records and historical data, all customer payment histories, all customer credit information, all retailer communication records and historical data, historical data collected on all present and former retailers for all eight (8) Debtor Entities, business contact lists for all eight (8) Debtor Entities, Google analytics historical data for all eight (8) Debtor Entities, 8x8 fax number and stored data, all recorded phone calls for all eight (8) Debtor Entities, and all other customer and retailer historical data developed or kept for any or all of the eight (8) Debtor Entities), employee communication history and data (including but not limited to communications via Slack, all data stored on tablets and/or computers, employee/independent contractor files, and all other history and data of communications between Bristlecone employees/independent contractors, and history and data of communications between Bristlecone employees/independent contractors and third party vendors servicing or acting on

1  behalf of as agents for Bristlecone or any of the eight (8) Debtor Entities), legal/compliance

2  records and data (including but not limited to policies and procedures, merchant/retailer

3  agreements, employee handbooks and training materials, employee/independent contractor files,

4  third party vendor handbooks and training materials, legal research, legal memos, legal

5  opinions, and any other legal or compliance records and data developed or maintained by

6  Bristlecone or any of the eight (8) Debtor Entities), custom built software platform (including

7  but not limited to software platforms for underwriting, decision making, customer management,

8  lease management, customer/retailer communication, application program interface, general

9  contract management, retailer training, permissions management, state-specific compliance,

10  payment processing, funding management, customer relationship management integration,

11  accounting integration, credit bureau integrations, fraud detection/management,

12  deployment/continuous integration management, electronic signature management/integration,

13  pet warranty management, FAQ management, authentication management, and all other

14  customer built software platforms), custom built Alteryx workflows, custom built software tools

15  (including but not limited to phone call archiver, investor website, tablet power manager,

16  standalone application program interface architecture, buyout calculator website, and all other

17  custom built software tools), customized webpages, cost and terms software, values unknown;

18  miscellaneous goodwill, values unknown; the medical/hearing aid, furniture, auto, bridal, and

19  pet industry relationships (point of sale/strategic relationships), values unknown; Barkify.Dog

20  trademark and intellectual property, values unknown; all the non-competes from the

21  employment contracts for all existing employees, values unknown. Additionally, causes of

22  action against third parties are detailed as follows:  potential causes of action for intentional

23  interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC;

24  Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values

25  unknown;  Potential causes of action for breach of contract against Nextep Funding, LLC;

26  Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs,

27  Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown;

28  Potential causes of action for breach of covenant of good faith and fair dealing against Nextep

Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown; Potential causes of action for bad faith lender liability and related claims against Westminster National Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values unknown; Potential causes of action for misappropriation of confidential information and trade secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding, Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown; and potential causes of action for intentional interference with prospective economic advantage against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, value unknown. Also, Bristlecone has secured claims in the amount of $0.00, and $3,404,036.19 in general unsecured debts, which includes an unknown claim belonging to Monterey Financial Services, Inc., arising from a certain receivables purchase agreements.

b. BoonFi LLC ("BoonFi") has bank accounts with a total balance of $3,533.02; accounts receivable in the amount of $47,416.94[1]. BoonFi does not have any machinery, office equipment, fixtures, goodwill, or intangibles and intellectual property. Additionally, BoonFi has third party causes of action detailed as follows: Potential causes of action for intentional interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown; Potential causes of action for breach of contract against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for breach of covenant of good faith and fair dealing against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown; Potential causes of action for bad faith lender liability and related claims against Westminster National

---

[1] The estimated fair market value for the accounts receivable and other assets listed on each Debtors' Schedules and in this Motion do not reflect actual book balances as reflected on the Debtors' internal financial statements prepared according to GAAP.

1  Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values

2  unknown;  Potential causes of action for misappropriation of confidential information and trade

3  secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob

4  Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding,

5  Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown;

6  Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC;

7  Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown; and potential causes

8  of action for intentional interference with prospective economic advantage against Nextep

9  Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis;

10 Rob Cook and Dusty Wunderlich, values unknown.  Also, BoonFi has a secured claim owing to

11 Monterey Financial Services, Inc., arising from certain lease contracts, values unknown.

12 BoonFi has general unsecured claims totaling $3,494.82, with priority unsecured claims totaling

13 $3,859.97.

14          c.    Bristlecone Lending, LLC ("Lending") has bank accounts with a total

15 balance of $41,972.53; accounts receivable total $1,365,941.69.  Lending does not have any

16 machinery, office equipment, fixtures, goodwill, or intangibles and intellectual property.

17 Additionally, Lending has third party causes of action detailed as follows:  Potential causes of

18 action for intentional interference with contractual relations against Nextep Funding, LLC;

19 Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and

20 Dusty Wunderlich, values unknown;  Potential causes of action for breach of contract against

21 Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul

22 Perez; Lucas Combs, Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer,

23 values unknown;  Potential causes of action for breach of covenant of good faith and fair

24 dealing against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values

25 unknown;  Potential causes of action for bad faith lender liability and related claims against

26 Westminster National Capital Co., LLC and Phil Burgess and their assignees or successors-in-

27 interest, values unknown;  Potential causes of action for misappropriation of confidential

28 information and trade secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
775 786 7600

Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding, Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown;  Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown; and  potential causes of action for intentional interference with prospective economic advantage against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, value unknown.  Lending has general unsecured claims totaling $17,570.49.   Lending has a secured claim owing to Monterey Financial Services, Inc., arising from certain lease contracts, values unknown.

        d.      Bristlecone SPV I, LLC ("SPV") has bank accounts with a total balance of $492.91; SPV has segregated funds held by FRS BC, LLC as assignee to Princeton Alternative Income Fund in an unknown financial institution in the amount of $1,183,159.60; accounts receivable in the amount of $6,573,036.18.  SPV does not have any machinery, office equipment, fixtures, goodwill, or intangibles and intellectual property.  Additionally, SPV has third party causes of action detailed as follows:  Potential causes of action for intentional interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, value unknown.  Potential causes of action for breach of contract against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for breach of covenant of good faith and fair dealing against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown;  Potential causes of action for bad faith lender liability and related claims against Westminster National Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values unknown;  Potential causes of action for misappropriation of confidential information and trade secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding, Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown;

1    Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC;
2    Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown; and potential causes
3    of action for intentional interference with prospective economic advantage against Nextep
4    Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis;
5    Rob Cook and Dusty Wunderlich, values unknown.  Also, SPV's secured claim owing are as
6    follows:  secured claim owing to Monterey Financial Services, Inc., arising from certain lease
7    contracts, values unknown; a secured claim owing to Westminster National Capital Co. in the
8    amount of $10,549,306.11, secured by Wells Fargo Bank checking account ending in 2757; a
9    secured claim owing to Westminster National Capital Co. secured by Wells Fargo Bank
10   checking account ending in 2732, value unknown; a secured claim owing Westminster National
11   Capital Co. secured by segregated funds held by FRS BC, LLC as assignee to Princeton
12   Alternative Income Fund in unknown financial institution, value unknown.  SPV has $0.00
13   owing to general unsecured creditors, with an unknown general unsecured claim owing to
14   Monterey Financial Services, Inc.

15                e.    I Do Lending, LLC ("I Do") has bank accounts with a total balance of
16   $45,015.06; accounts receivable are $721,121.26.  I Do does not have any machinery, office
17   equipment, fixtures, goodwill, or intangibles and intellectual property. Additionally, I Do has
18   third party causes of action detailed as follows:  Potential causes of action for intentional
19   interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC;
20   Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values
21   unknown;  Potential causes of action for breach of contract against Nextep Funding, LLC;
22   Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs;
23   Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown;
24   Potential causes of action for breach of covenant of good faith and fair dealing against Nextep
25   Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown;  Potential
26   causes of action for bad faith lender liability and related claims against Westminster National
27   Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values
28   unknown;  Potential causes of action for misappropriation of confidential information and trade

secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding, Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown; Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown; and potential causes of action for intentional interference with prospective economic advantage against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown.  Also, I Do has a secured claim owing to Monterey Financial Services, Inc., arising from certain lease contracts, values unknown.  I Do has general unsecured claims owing in the amount of $9,158.21.

       f.      Medly, LLC ("Medly"), does not have a bank account.  Medly has no accounts receivable.  Medly does not have any machinery, office equipment, fixtures, goodwill, or intangibles and intellectual property.  Additionally, Medly has third party causes of action detailed as follows:  Potential causes of action for intentional interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown;  Potential causes of action for breach of contract against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown;  Potential causes of action for breach of covenant of good faith and fair dealing against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown;  Potential causes of action for bad faith lender liability and related claims against Westminster National Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values unknown;  Potential causes of action for misappropriation of confidential information and trade secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding, Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown;  Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul

1  and Brian Davis, values unknown; and potential causes of action for intentional interference

2  with prospective economic advantage against Nextep Funding, LLC; Nextep Finance, LLC;

3  Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values

4  unknown. Medly has a secured claim owing to Monterey Financial Services, Inc., arising from

5  certain lease contracts, values unknown, and general unsecured claims totaling $0.00.

6          g.    One Road Lending, LLC ("One Road") has bank accounts with a total

7  balance of $43,481.86; accounts receivable is $2,100,134.44. One Road does not have any

8  machinery, office equipment, fixtures, goodwill, or intangibles and intellectual property.

9  Additionally, One Road has third party causes of action detailed as follows: Potential causes of

10  action for intentional interference with contractual relations against Nextep Funding, LLC;

11  Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and

12  Dusty Wunderlich, values unknown; Potential causes of action for breach of contract against

13  Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul

14  Perez; Lucas Combs, Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer,

15  values unknown; Potential causes of action for breach of covenant of good faith and fair

16  dealing against Nextep Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values

17  unknown; Potential causes of action for bad faith lender liability and related claims against

18  Westminster National Capital Co., LLC and Phil Burgess and their assignees or successors-in-

19  interest, values unknown; Potential causes of action for misappropriation of confidential

20  information and trade secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy

21  Retail Services, LLC; Rob Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas

22  Combs, Doug Harding, Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick

23  Brewer, values unknown; Potential causes of action for defamation against Nextep Funding,

24  LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values

25  unknown; and potential causes of action for intentional interference with prospective economic

26  advantage against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC;

27  Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values unknown. Also, One Road

28  has a secured claim owing to Monterey Financial Services, Inc., arising from certain lease

1   contracts, values unknown.  One Road has general unsecured claims owing in the amount of

2   $33,512.34.

3              h.     Wags Lending, LLC ("Wags") has bank accounts with a total balance of

4   $169,282.75; accounts receivable is $7,227,559.03.  Wags does not have any machinery, office

5   equipment, fixtures, goodwill, or intangibles and intellectual property.  Additionally, Wags has

6   third party causes of action detailed as follows:  Potential causes of action for intentional

7   interference with contractual relations against Nextep Funding, LLC; Nextep Finance, LLC;

8   Pinogy Retail Services, LLC; Sam Paul; Brian Davis; Rob Cook and Dusty Wunderlich, values

9   unknown;  Potential causes of action for breach of contract against Nextep Funding, LLC;

10  Nextep Finance, LLC; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs,

11  Matthew Hack, Doug Harding, LBC Origination, Inc., and Nick Brewer, values unknown;

12  Potential causes of action for breach of covenant of good faith and fair dealing against Nextep

13  Funding, LLC; Nextep Finance, LLC; Sam Paul and Brian Davis, values unknown;  Potential

14  causes of action for bad faith lender liability and related claims against Westminster National

15  Capital Co., LLC and Phil Burgess and their assignees or successors-in-interest, values

16  unknown;  Potential causes of action for misappropriation of confidential information and trade

17  secrets against Nextep Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Rob

18  Cook; Sam Paul; Brian Davis; Dusty Wunderlich; Saul Perez; Lucas Combs, Doug Harding,

19  Matthew Hack, Anthony Malanga, LBC Origination, Inc., and Nick Brewer, values unknown;

20  Potential causes of action for defamation against Nextep Funding, LLC; Nextep Finance, LLC;

21  Pinogy Retail Services, LLC; Sam Paul and Brian Davis, values unknown;  and potential causes

22  of action for intentional interference with prospective economic advantage against Nextep

23  Funding, LLC; Nextep Finance, LLC; Pinogy Retail Services, LLC; Sam Paul; Brian Davis;

24  Rob Cook and Dusty Wunderlich, values unknown.  Wags has general unsecured liabilities

25  owing in the amount of $147,759.28, with a secured claim owing to Monterey Financial

26  Services, Inc., arising from certain lease contracts, values unknown.

27          2.   The secured and general unsecured claims that have been obligated to by the eight

28  (8) Debtor Entities as of the Petition Date, are detailed as follows:

a. Monterey Financial Services, Inc. Receivables Purchase Agreement dated January 13, 2014, with Wags, LLC, and a Receivables Purchase Agreement dated May 20, 2015, with Wags, LLC. The estimated total amount owing is $2,103,511.03, including the secured claims detailed in Paragraphs 2.a through 2.e herein. A UCC-1 was filed on February 20, 2014, in favor of Monterey Financial Services, Inc., against collateral consisting largely of all the assets of Wags Lending, LLC, including all accounts, accounts receivables, chattel paper, contract rights, rights to payment, letters of credit, documents, and proceeds Additionally, Monterey Receivables Funding, LLC, has a filed UCC-1 dated February 20, 2014, secured against certain collateral of Wags, LLC, including all accounts, accounts receivables, chattel paper, contract rights, rights to payment, letters of credit, documents and proceeds.

b. A UCC-1 was filed on February 20, 2014, by Monterey Financial Services, Inc. Profit Sharing Plan And Trust, secured against certain assets of Wags Lending, LLC, including all accounts, accounts receivables, chattel paper, contract rights, rights to payment, letters of credit, documents and proceeds.

c. Monterey Financial Services, Inc. has a UCC-1 secured with respect to assets of Bristlecone Financing, LLC, filed on June 23, 2014, including all accounts, accounts receivables, chattel paper, contract rights, rights to payment, letters of credit, documents, and proceeds.

d. Monterey Financial Services, Inc. Profit Sharing Plan and Trust has a filed UCC-1 secured against certain assets of Bristlecone Financing, LLC, including all accounts, accounts receivables, chattel paper, contract rights, rights to payment, letters of credit, documents and proceeds. .

e. Monterey Receivables Funding, LLC, has a filed UCC-1 dated June 23, 2014, securing certain assets of Bristlecone Financing, LLC, including all accounts, accounts receivables, chattel paper, contract rights, rights to payment, letters of credit, documents and proceeds.

f. Strategic Funding, Inc. had a secured claim with respect to Bristlecone Holdings, LLC and Wags Lending, LLC, secured by a UCC-1 filed on March 16, 2015, secured

1  against certain assets, including all accounts, accounts receivables, chattel paper, contract rights,

2  rights to payment, letters of credit, documents and proceeds.  Without taking a position as to

3  whether the Strategic Funding, Inc. claim has been paid in full, Westminster National Capital

4  Co., LLC purports to hold an assignment from Strategic Funding, Inc., filed on December 3,

5  2015.  Debtors assert that this secured claim has been paid in full.

6         g.    Westminster National Capital Co., LLC, has a filed UCC-1 dated November

7  14, 2015, in favor of Wags, LLC and Wags Lending, LLC, including all accounts, accounts

8  receivables, chattel paper, contract rights, rights to payment, letters of credit, documents and

9  proceeds.  The estimated amount owing is $10,895,564.14, with an estimated general unsecured

10  claim deficiency of $2,500,000 to $3,500,000.

11  **ASSETS TO BE SOLD**

12      The Debtors' assets shall be sold in five (5) groups, detailed as follows:

13         a. Group #1 Assets: A purchaser to be identified prior to or at the sale hearing shall

14  purchase the following described personal property assets: Lending lease contracts; and all

15  consumer leases that Bristlecone owns all right, title, and interest in (excluding all leases held in

16  SPV) that serve as collateral for Bristlecone's Receivables Purchase Agreement with Monterey

17  Financial Services, Inc.. The total value of Group #1 Assets is estimated at $5,000.00.

18         b. Group #2 Assets:  Additionally, a purchaser to be identified prior to or at the sale

19  hearing shall purchase the following described personal property assets: Current Wags retailer

20  relationships; current One Road retailer relationships; current Lending retailer relationships; a

21  mirror copy of the retailer dashboard and point of sale origination software code for each Wags,

22  One Road, and Lending; the trademarks, goodwill, Internet domain names, and mirrored copy

23  of the websites for each Wags, One Road, and Lending; and a copy of all POP materials, a copy

24  of all advertising materials, a copy of all marketing materials, and the kiosks for each Wags,

25  One Road, and Lending.  The total value of Group #2 Assets is estimated at $350,000.00 to

26  $500,000.00.

27         c. Group #3 Assets: Additionally, a purchaser to be identified prior to or at the sale

28  hearing shall purchase the following described personal property assets: Certain office

1  equipment, including all computer equipment and communication systems, equipment and
2  software, including miscellaneous computer tablets, computer monitors, filing cabinets,
3  cubicles, appliances, headsets, dishware, office décor, chairs, telephones, office supplies, kiosks,
4  desks, and other office equipment; Intangibles and intellectual property consisting of
5  origination/pricing logic and algorithms for approval and pricing and customized applications
6  and lease agreements for all eight (8) Debtor Entities; trademarks for Bristlecone, SPV, BoonFi,
7  Medly, Barkify, and I Do;  for Bristlecone, SPV, BoonFi, Medly, Barkify, and I Do, the Internet
8  domain names including all domain names owned by Bristlecone except for those specifically
9  listed in Group #2 Assets; for all eight (8) Debtor Entities, the Google accounts, websites
10 including all website historical data and logs, and website infrastructure, custom built Salesforce
11 infrastructure, custom built Tableau dashboards and workbooks, product development records
12 and historical data (including but not limited to those located in or utilizing Youtrack, Wrike,
13 Asana, Slack, and other first or third party software or applications), custom built
14 communication templates (including but not limited to all email templates, all Mailchimp
15 templates, all Mandrill templates, letter and other form documents, all training materials, all
16 marketing materials, all promotional offer templates, and other communication templates
17 designed to communicate to a consumer, retailer, third-party vendor, strategic partner, or
18 employee/independent contractor), marketing source materials and data (including but not
19 limited to website content from the websites of all eight (8) Debtor Entities, marketing materials
20 and contacts and lists from Constant Contact, and all other materials and data used to develop
21 marketing materials), retailer historical data (including but not limited to all retailer
22 communication records and historical data, historical data collected on all present and former
23 retailers for all eight (8) Debtor Entities, business contact lists for all eight (8) Debtor Entities,
24 Google analytics historical data for all eight (8) Debtor Entities, 8x8 fax number and stored
25 data, all recorded phone calls with retailers for all eight (8) Debtor Entities, and all other retailer
26 historical data developed or kept for any or all of the eight (8) Debtor Entities), employee
27 communication history and data (including but not limited to communications via Slack, all data
28 stored on tablets and/or computers, employee/independent contractor files, and all other history

and data of communications between Bristlecone employees/independent contractors, and history and data of communications between Bristlecone employees/independent contractors and third party vendors servicing or acting on behalf of as agents for Bristlecone or any of the eight (8) Debtor Entities), legal/compliance records and data (including but not limited to policies and procedures, merchant/retailer agreements, employee handbooks and training materials, employee/independent contractor files, third party vendor handbooks and training materials, legal research, legal memos, legal opinions, and any other legal or compliance records and data developed or maintained by Bristlecone or any of the eight (8) Debtor Entities), custom built software platform (including but not limited to software platforms for underwriting, decision making, customer management, lease management, customer/retailer communication, application program interface, general contract management, retailer training, permissions management, state-specific compliance, payment processing, funding management, customer relationship management integration, accounting integration, credit bureau integrations, fraud detection/management, deployment/continuous integration management, electronic signature management/integration, pet warranty management, FAQ management, authentication management, and all other customer built software platforms), custom built Alteryx workflows, custom built software tools (including but not limited to phone call archiver, investor website, tablet power manager, standalone application program interface architecture, buyout calculator website, and all other custom built software tools), customized webpages, cost and terms software; miscellaneous goodwill; the medical/hearing aid and bridal industry relationships (point of sale/strategic relationships), including but not limited to the relationships with GetFinancing, AllWell, MedCentric, Epic, and an auto industry point of sale and strategic relationship with Repair Pal; Barkify.Dog trademark, intellectual property, Internet domain name, website infrastructure and historical data, POP materials, advertising materials, and marketing materials; and all the Confidentiality, Invention Assignment, Non-Solicitation, and Non-Competition Agreements for all existing and former Bristlecone employees and independent contractors. The total value of Group #3 Assets is estimated at $100,000.00 to $150,000.00.

1      d. Group #4 Assets:  Additionally, a purchaser to be identified prior to or at the sale

2  hearing shall purchase the following described personal property assets: For all eight (8) Debtor

3  entities, all customer personally identifiable information and historical data (including but not

4  limited to all customer application historical data, all customer lease agreement historical data,

5  all  customer  communication  records  and  historical  data,  all  recorded  phone  calls  with

6  customers,  all  customer  payment  histories,  all  customer  credit  information,  and  all  other

7  customer personally identifiable information or historical data developed or kept for any or all

8  of the eight (8) Debtor Entities).  The total value of Group #4 Assets is estimated at $5,000.00.

9      e. Group #5 Assets:  Additionally, a purchaser to be identified prior to or at the sale

10  hearing shall  purchase the  following described  personal  property assets: All  potential  civil

11  claims against third parties listed above in the Statement of Facts.  The total value of Group #5

12  Assets is estimated at $650,000.00.

13      (Group #1 Assets, Group #2 Assets, Group #3 Assets, Group #4 Assets, and Group #5

14  Assets are collectively referred to as the "Assets").

15                    **BIDDING PROCEDURES AT THE HEARING**

16      Debtor  shall  allow  interested  bidders  the  opportunity  to  purchase  Group  #1  Assets,

17  Group #2 Assets, Group #3 Assets, Group #4 Assets, and/or Group #5 Assets at the duly noticed

18  sale hearing based upon the following bidding terms and conditions:

19  A.        **Minimum  Opening  Bid**:   Interested  bidders  for  Group  #1  Assets  shall  be

20             required to submit a minimum opening bid of $5,000.00. The minimum opening bid for

21             the  Group #2  Assets  shall  be  $350,000.00.   The  minimum  opening  bid  for  the  Group #3

22             Assets  shall  be  $100,000.00.   The  minimum  opening  bid  for  the  Group #4  Assets  shall

23             be  $5,000.00.   The  minimum  opening  bid  for  the  Group #5  Assets  shall  be  $650,000.00.

24  B.        **Escrow  Deposit**:  The  winning  bidder  for  each  group  of  Assets  shall  be  required

25             to  deposit  with  cashier's  check  or  bank  wire  with  the  Harris  Law  Practice  LLC  Client

26             Trust  Account  a  deposit  consisting  of  the  total  sum  of  the  winning  bid  for  each  group  of

27             Assets  within  twenty-four  (24)  hours  after  the  hearing  on  the  Motion,  which  deposit  is

28             deemed  non-refundable  and  forfeited  to  the  Debtors  in  the  event  the  successful  bidder

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
775 786 7600

1    fails to timely close for any reason;

2    C.        **Proof of Funds**:  At the hearing, any interested bidders must be able to provide

3    adequate proof to the Debtors and Bankruptcy Court of the ability to fund the escrow

4    deposit and pay the final purchase price within one (1) business day of the hearing;

5    D.        **Minimum bidding increments**:  The minimum bidding increments shall consist

6    of no less than Five Thousand Dollars ($5,000.00);

7    E.        **Close of Escrow**:  Any successful overbidder must be able to close escrow

8    within one (1) business day from the date of entry of an Order approving the sale.

9    F.        **Credit Bidding**:  No credit bids shall be allowed.

10                                    **BASIS FOR RELIEF**

11   A.    The Sale Is a Product of the Debtors' Reasonable Business Judgment

12            Section 363(b)(1) of the Bankruptcy Code provides: "the Trustee, after notice and a

13   hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

14   estate."  Section 105(a) of the Bankruptcy Code provides in relevant part: "The Court may issue

15   any order, process, or judgment that is necessary or appropriate to carry out the provisions of

16   this title."  Virtually all courts have held that approval of a proposed sale or disposition of assets

17   of a debtor under section 363 of the Bankruptcy Code outside the ordinary course of business

18   and prior to the confirmation of a plan of reorganization is appropriate if the a court finds that

19   the transaction represents a reasonable business judgment on the part of the trustee or debtor-in-

20   possession.  *See* In re Abbotts Dairies of Pa., 788 F.2d 143 (3d Cir. 1986); In re Delaware &

21   Hudson Ry. Co., 124 B.R. 169, 476 (D. Del. 1991) (holding that the following non-exclusive

22   list of factors may be considered by a court in determining whether there is a sound business

23   purpose for an asset sale: the proportionate value of the asset to the estate as a whole; the

24   amount of elapsed time since the filing; the effect of the proposed disposition of [sic] the future

25   plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised

26   values of the property; and whether the asset is decreasing or increasing in value"); In re Lionel

27   Corp., 722 F.2d 1063 (2d Cir. 1983); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 391 (6th

28   Cir. 1986); In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).  Walter v.

1    Sunwest Bank (In re Walter), 83 B.R. 14, 17 Bankr. Ct. Dec. 101 (B.A.P. 9th Cir. Cal. 1988).

2    When a debtor articulates a reasonable basis for its business decisions, "Courts will generally

3    not entertain objections to the debtor's conduct." Committee of Asbestos-Related Litigants v.

4    Johns-Manville Corp. (In re Johns- Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D. N.Y. 1986).

5        The "sound business reason" test requires a trustee or debtor-in-possession to establish

6    four elements: (1) that a sound business purpose justifies the transaction outside the ordinary

7    course of business; (2) that accurate and reasonable notice has been provided to interest persons;

8    (3) that the trustee or the debtor-in-possession has obtained a fair and reasonable price; and (4)

9    good faith. In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D. Penn. 1991); In re

10   Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); Phoenix Steel Corp., 82

11   B.R. 334, 335-36 (Bankr. D. Del. 1987); see also Stephens Indus., 789 F.2d 386, 390 (6th Cir.

12   1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2nd Cir. 1983).

13       The paramount goal in any proposed sale or use of property of the estate is to maximize

14   the proceeds received by the estate.  See, e.g., In re Food Barn Stores, Inc., 107 F.3d 558, 564-

15   65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the

16   value of the estate at hand"); Integrated Resources, 147 B.R. 650, 659 (S.D. NY 1992) ("It is a

17   well-established principle of bankruptcy law that the... [trustee's] duty with respect to such

18   sales is to obtain the highest price or greatest overall benefit possible for the estate.")  (quoting

19   In re Atlanta Packaging Prods., Inc., 99 BR. 124, 130 (Bankr. N.D. Ga. 1988)).  As long as the

20   transaction appears to enhance a debtor's estate, court approval of a trustee's decision should

21   only be withheld if the trustee's judgment is clearly erroneous, too speculative, or contrary to

22   the provisions of the Bankruptcy Code.  GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.,

23   331 B.R. 251, 255 (N.D. Tex. 2005); In re Lajijani, 325 B.R. 282, 289 (9th Cir. B.A.P. 2005); In

24   re WPRV-TV, Inc., 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to

25   administer the estate, including authority to conduct public or private sales of estate property.

26   Courts have much discretion on whether to approve proposed sales, but the trustee's business

27   judgment is subject to great judicial deference.").

28       In the instant case, the Debtors are all currently operating as a going concern.  However,

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
775 786 7600

secured creditors Monterey Financial Services, Inc., Monterey Financial Services, Inc. Profit Sharing Plan and Trust, Monterey Receivables Funding, LLC (collectively "Monterey") and FRS BC, LLC as assignee of Westminster National Capital Co., LLC ("Westminster"), are all claiming cash collateral interests in most of the revenue derived from the Debtors' lease contracts.    To date, the Debtors have not been able to obtain consent of any of the secured creditors for the use of cash collateral. Based on ongoing operating expenses, Debtors will most likely run out of cash in about two (2) weeks from now.   As a result of the nature of the Debtors' assets that are being sold herein, the Debtors can only maximize the value of their assets if they are still operating as a going concern when the assets are sold.  In light of the imminent danger the Debtors are facing in running out of cash to continue operations, it is the Debtors' best business judgment that the assets be sold at this time in the manner proposed herein.

B.   <u>The Bidding Procedures Are Appropriate and Will Maximize the Value Received for the Assets</u>

As discussed above, the paramount goal of any proposed sale or use of property of the estate is to maximize the proceeds received by the estate.   To that end, courts recognize that procedures intended to enhance competitive bidding are consistent with this goal and therefore are appropriate in the context of bankruptcy sales.  See, e.g. <u>In re Fin'l News Network, Inc.</u>, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets… [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

The bidding procedures proposed in this Motion establish parameters under which the value of the Assets may be tested at the sale hearing, thus ensuring a competitive and fair bidding process and increasing the likelihood that the Debtors' creditors will receive the greatest possible distribution.  Prior to the sale hearing, the Debtors will market the assets through their industry contacts and will also publish the Notice of this Motion in several widely circulated local and/or national publications.   The bidding procedures allow the Debtors to undertake the sale of the Assets in as expeditious and efficient manner as possible, which the

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
775 786 7600

1    Debtors believe is essential to maximizing the value of their estate for their creditors.

2    The Debtors also believe that the proposed sale and bidding procedures will promote

3    active bidding from seriously interested parties and will dispel any doubt as to the best and

4    highest offer reasonably available for the Assets.  In particular, the proposed sale and

5    overbidding will allow the Debtors to conduct the sale under the auspices of the Bankruptcy

6    Court in a controlled, fair, and open fashion that will encourage participation by financially

7    capable bidders who demonstrate the ability to close a transaction.  Further, the proposed

8    bidding procedures provide the Debtors with the opportunity to consider all of the highest and

9    best offer(s) for the Assets.

10    In sum, the Debtors believe that the proposed sale and bidding procedures are consistent

11    with the relevant standards governing auction proceedings and bidding incentives in bankruptcy

12    proceedings.

13    The Bankruptcy Rules require that notice of a proposed use, sale, or lease of property,

14    other than cash collateral, not in the ordinary course of business be given pursuant to Fed. R.

15    Bankr. P. 2002(a)(2), (c)(1), (i), and (k) and Fed. R. Bankr. P. 6004(a).  Taken together, these

16    provisions of Bankruptcy Rule 2002 require notification to creditors of the proposed sale of the

17    Debtors' assets, including a disclosure of the time and place of an auction, the terms and

18    conditions of a sale, and the deadline for filing any objections.  Fed. R. Bankr. P. 2002(a)(2),

19    (c)(1), (i), and (k).

20    The Debtors submit that this Motion and corresponding Notice filed concurrently

21    herewith, fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide

22    timely and adequate notice of the sale to the Debtors' creditors and other interested parties, as

23    well as to those parties who have expressed an interest, or may express an interest, in bidding on

24    the Assets.  The proposed time frame between the filing of this Motion, the commencement of

25    the bidding process and the sale hearing will provide interested purchasers sufficient time to

26    participate in the bidding process.

27

28

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
775 786 7600

C. <u>Any Sale of the Assets Should Be Free and Clear of Liens, Claims, Encumbrances, and Interests</u>

Pursuant to section 363(f) of the Bankruptcy Code, the Debtors seek authority to sell and transfer their rights, interests and title in the Assets to the success buyer(s) free and clear of all liens, claims, encumbrances, and interests, with such liens, claims, encumbrances, and interests to attach to the proceeds of the sale of the Assets, subject to any rights and defenses of the Debtors and other parties in interest with respect thereto.

Section 363(f) of the Bankruptcy Code provides in pertinent part:

The trustee may sell property under subsection (b) or (c) of this Section free and clear of any interest in such property of an entity other than the estate only if-

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in a bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

<u>11 U.S.C. §363 (f)</u>.  *See also* <u>In re Elliot</u>, 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that section 363(f) written in disjunctive; court may approval sale "free and clear" provided at least one of the requirements is met).

The Debtors also seek an order of the Court prohibiting all persons holding liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability, from asserting them against any successful Buyer under Section 363(f) of the Bankruptcy Code.    In this case, the Debtors do not believe that any of the assets being sold are encumbered by any secured creditor, other than the Group #1 Assets which are encumbered by Monterey.    Monterey shall retain its lien against the Group #1 Assets and those shall be transferred free and clear of any claims, encumbrances or interests other than Monterey's validly perfected liens.

1    Any holders of liens, claims, encumbrances, or interests who do not object or who

2    withdraw their objections to the sale or the Motion are deemed to have consented to the Motion

3    and sale pursuant to Bankruptcy Code §363(f)(2).

4        D.    <u>Substantially All of the Debtors' Assets Are Being Sold</u>

5        The Debtors are proposing to sell substantially all of their assets through this Motion,

6    however, there is a good business reason to sell the assets under §363(b)(1) before seeking plan

7    confirmation.    As indicated previously, the Debtors are currently still operating as going

8    concerns.  However, none of the Debtors' secured lenders have consented to use of their cash

9    collateral, and the Debtors do not have the ability to provide adequate  protection in the form of

10    substitute liens for use of the cash collateral.  As a result, the Debtors will run out of cash to

11    continue operating in just a matter of weeks.  If the Debtors cease their operations and the

12    ability to originate new lease contracts, their relationships with retail partners will be irreparably

13    damaged and any monetary value attributed to those relationships will diminish substantially.

14    Because of that, the Debtors must attempt to sell their assets while they still have the ability to

15    operate and preserve the going concern value of those retail partner relationships.  Moreover,

16    the Debtors currently employ approximately 14 employees, which will all be left without jobs if

17    the Debtors cannot sell the assets and raise sufficient cash to proceed to Plan confirmation.

18        Many courts have approved sales of all or substantially all of a debtor's assets outside a

19    plan confirmation.  In <u>Lionel Corp.</u>, 722 F.2d 1063, the court directed that a court should

20    consider all of the "salient factors pertaining to the proceeding" and "act to further the diverse

21    interests of the debtor, creditors and equity holders" when making the determination as to

22    whether there is a good business reason to effect a §363 sale before confirmation.  The <u>Lionel</u>

23    court then set forth a nonexclusive list of certain factors to guide a court on its consideration of

24    the issue.    In <u>In re GMC</u>, 407 B.R. 463, (Bankr. S.D. N.Y. 2009), the court adopted the <u>Lionel</u>

25    factors, and suggested a few more factors that might be considered, including:

26        1.  Does the estate have the liquidity to survive until confirmation of a plan?

27        2.  Will the sale opportunity still exist as of the time of plan confirmation?

28        3.  If not, how likely is it that there will be a satisfactory alternative sale opportunity, or

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
775 786 7600

1         a stand-alone plan alternative that is equally desirable (or better) for creditors? And-

2     4.  Is there a material risk that by deferring the sale, the patient will die on the operating

3         table?

4 In re GMC, 407 B.R. at 490.

5       In the present case, all of the GMC factors are applicable in this instance. The Debtors

6 do not have the liquidity to survive until confirmation of a plan, the sale opportunity will not

7 exist at the time of plan confirmation because the Debtors will no longer be a going concern,

8 there will not be a satisfactory alternative sale opportunity because the most valuable assets will

9 be substantially harmed, and the Debtors will most definitely die on the operating table if they

10 cannot sell their assets now. Simply put, there is a very small window of opportunity for the

11 Debtors to maximize the value of their assets, and the window of opportunity is now. Any sale

12 proceeds obtained from the sale of the assets can then be incorporated into any plan proposed by

13 the Debtors.

14       In the TWA chapter 11 case cited by the GM court, substantially all of the airline's

15 assets were sold to American Airlines in a §363 sale. A contention was made that the 363 sale

16 was a *sub rosa* plan. The TWA court rejected the contention and explained:

17         It is true, of course, that TWA is converting a group of volatile assets into

18         cash. It may also be true that the value generated is not enough for a dividend to

19         certain groups of unsecured creditors. It does not follow, however, that the sale

20         itself dictates the terms of TWA's future chapter 11 plan. The value generated

21         through the Court approved auction process reflects the market value of TWA's

22         assets and the conversion of the assets into cash is the contemplated result under

23         §363(b).

24 In re Trans World Airlines, Inc., 2001 Bankr. LEXIS 980, 2001 WL 1820326, at *12 (Bankr. D.

25 Del. Apr. 2, 2001)

26       As indicated in the Declaration of B. Kyle Ferguson filed concurrently herewith, the

27 Debtors have actively sought to obtain financing and sale opportunities before determining that

28 the only remaining course is a public bankruptcy court supervised auction of the assets as set

1    forth herein.    The auction will ensure that all interested buyers will have the opportunity to bid

2    on the assets, thus maximizing their value.

3        At this time, Debtors are informed and believe that there may be some insiders of the

4    Debtors that may have an interest in purchasing the assets.  As indicated in the Debtors' original

5    sale Motion (Docket No. 76), Gas Hole, LLC[2] had originally indicated an interest in being a

6    stalking horse bidder for Group #1 assets in the original sale Motion.   However, due to the

7    Debtors' decision to re-group the sale of assets in different categories, Gas Hole, LLC withdrew

8    its offer .   However, prior to or at the time of the sale hearing, there may be certain insiders that

9    elect to make a purchase offer or bid on any or all of the Assets.  To the extent that any creditors

10   or parties-in-interest object to the purchase of Assets by any of the Debtors' insiders, the simple,

11   fair and open bidding process provides the opportunity for any interested buyers to acquire the

12   Debtors' Assets, thus preventing any unfair advantage for the insiders.    The bidding process

13   also allows for a "market test" of the Assets so that the highest and best price is obtained from

14   any willing buyers.   The Debtors' Assets are unique and are difficult to market for sale in any

15   traditional sense.     As a result, the Debtors will continue to publish the notice of the proposed

16   sale in publications where the Debtors believe a high concentration of interested bidders can

17   obtain information on the sale/auction.  The Debtors have also created a designated web page on

18   their main website to provide parties with information on the proposed 363 sale.  *See*

19   http://bristleconeholdings.com/363-asset-sale/.

20        Lastly, the parties that the Debtors believe would be most interested in the purchase of

21   the assets are existing creditors or competitors of the Debtors which are already participants in

22   these proceedings and therefore aware of the proposed sale.  Westminster and Nextep Funding,

23   both parties that the Debtors believe may be the most interested in the purchase of assets, have

24   had significant access to the Debtors' records and information and the ability to conduct due

25   diligence.    Any interested insiders in purchasing the assets have substantially the same

26   information available to them  that Westminster and Nextep have had.

27        Courts in this district have approved sales of assets to insiders after evaluating any

28

---

[2] Gas Hole, LLC's members include Anthony Marnell III and Gregory K. Wells, which are both directly or indirectly insiders of the Debtors.

proposed sale under the "entire fairness" standard which "entails evaluating both whether the offer price constituted fair value and whether the offer was the product of fair dealing." *See* In re Station Casinos, Inc., 2010 Bankr. LEXIS 5672*, Case No. BK-09-52477-gwz (Bankr. D. Nev. July 14, 2010), *citing* Brown V. Kinross Gold U.S.A., Inc., 531 F. Supp. 2d 1234, 1246 (D. Nev. 2008), In re Zenith Elecs. Corp., 241 B.R. 921, 108 (Bankr. D. Del. 1999).    Often, a debtor's assets have more value to insiders than they would to any other potential outside bidder.  In re Station Casinos, Inc., 2010 Bankr. LEXIS 5672 at *25.  It is not novel or unique for insiders to purchase assets of a debtor and there is no prohibition against it as long as there is fair dealing among the parties.  Based on all of the facts of this case, the Debtors believe the proposed sale at an auction conducted by the Bankruptcy Court, is the only means to maximize the highest value of the Debtors' assets.

## **REQUEST FOR RELIEF FROM BANKRUPTCY RULE 6004**

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property… is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

Courts in this district routinely waive the stay with respect to bidding procedures and sale orders. *See, e.g.,* In re Nathan L. Topol, Case No. 12-51014-gwz (Bankr. D. Nev. Oct. 30, 2015); In re David M. Semas and Susan O. Semas, Case No. 13-52337-btb (Bankr. D. Nev. April 5, 2017);  In re Western Funding, Inc., Case No. 13-1758-LED (Bankr. D. Nev. Nov. 27, 2013); In re Xyience Incorporated, Case No. 08-10474-MKN (Bankr. D. Nev. April 7, 2008); In re Rodeo Creek Gold, Inc., Case No. 13-50301-MKN (Bankr. D. Nev. May 3, 2013); In re November 2005 Land Investors, Case No. 11-20704-MKN (Bankr. D. Nev. Dec. 15, 2011); In re Western Funding, Inc., Case No. 13-1758-LED (Bankr. D. Nev. Jan. 6, 2014).  The Debtors respectfully submit that waiver of the stay is appropriate and justified.  The proposed bidding procedures and the timeline for the hearing on this Motion, balance the due process protections of the Bankruptcy Code with the reality of the Debtors' financial situation and their need to quickly maximize and realize the value of the Assets.  As a result, the stay should be waived, and the Debtors should be authorized to act in accordance with the Bidding Procedures as

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
775 786 7600

expeditiously as possible.

### SAFE HARBOR FOR BUYER UNDER §363(m)

The proposed bidding procedures will provide the opportunity for interested parties to purchase the Debtors' Assets in a fair and open Court supervised process. Although the identity of any successful buyer(s) is not currently known, the Court will be able to make a determination that any buyer is a good faith purchaser at the conclusion of the Court supervised sale/action. Accordingly, the Debtors would also request that this Court make its finding that any successful buyer is a good faith purchaser and subject to the protections afforded it pursuant to 11 U.S.C. §363(m).

### CONCLUSION

Wherefore, the Debtors respectfully request that this Court enter its Order: 1) Authorizing the sale of Group #1, Group #2, Group #3, Group #4 and Group #5 Assets to any successful buyer(s) to be identified prior to or at the hearing on this Motion subject to the bidding procedures and terms and conditions set forth in this Motion; 2) granting relief from the 14 day stay requirements of Rule 6004; and 3) finding that any successful buyer of the Assets is a good faith purchaser and subject to the "safe harbor" protections of 11 U.S.C. §363(m); and 4) for such other and further relief as is just and proper.

DATED this 30th day of June, 2017.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC

/s/ Stephen R. Harris

_____

Attorneys for Jointly Administered Debtors

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
775 786 7600

26